# Reeves v. Lampley.

### Bill in Equity to enjoin Sale under Mortgage.

1. *Undue influence; what necessary to avoid contract.*—Influence to be undue, in the sense which makes a contract voidable, must be such as wrongfully dominates the will of the person subjected to it, and, so far as relates to the particular trans-

29

[Reeves v. Lampley.]·

action, substitutes for his will the, will of another, thereby inducing such person to do what he otherwise would. not have done.

2. *Same; avoidance of mortgage; sufficiency of evidence.*—Pending an indictment against her husband for embezzlement, a; wife executed two mortgages to secure the payment of the: money alleged to have been embezzled looking to the dismissal of the prosecution against her husband. When the debts secured by said mortgages matured the wife was unable to pay them, and for the purpose of liquidating them, borrowed money at the legal rate of interest from a third person, and executed to him a mortgage upon her property to secure the same. There was no fiduciary relation between the wife and the last mortgagee, and it was not shown that he took advantage of the pendency of the prosecution against her husband to obtain the mortgage; but it appears that in borrowing the money the wife acted advisedly and of her own volition, though induced thereto by stress of circumstances. *Held*: That the wife was not unduly influenced to execute the last mortgage to such an extent as to authorize the cancellation thereof.

APPEAL from the Chancery Court of Barbour.

Heard before the Hon. JERE N. WILLIAMS.

The bill in this case was filed by appellant, Lizzie G. Reeves, against the appellee, Ira Lampley, to enjoin the sale of certain lands under a mortgage executed by the former to the latter, and to cancel. said mortgage as a cloud upon appellant's title. The bill avers that complainant, who was a married woman, owned and possessed in her own right the land in suit on June 30th, 1893, and on said date she executed. two mortgages to secure the sum of $5,000, $3,000 to H. D. Clayton, as. receiver of the John McNab Bank, and $2,000 to Merrill & White, as trustees for two New York banks. That prior to said date Jere H. Reeves, who was and is the husband of complainant, had been indicted by the grand jury of Barbour county for embezzlement, together with his brother, W. N. Reeves, who were respectively vice president and president of the John McNab Bank, which failed in March, 1891. A change of venue was granted on said indictments to the county of Bullock, where W. N. Reeves was tried, convicted and sentenced to the

penitentiary for the period of three years. Upon appeal
from said conviction, W. N. Reeves remained in the
Bullock county jail for about three months, after which
time he was released on bail; the Supreme Court having
reversed and remanded the case. That while so incar-
cerated he was frequently visited by his brother, Jere
H. Reeves, and the appellant. That after such reversal,
and at the spring term, 1893, of said Bullock County
circuit court, the said W. N. Reeves and Jere H. Reeves
appeared to answer the indictment against them; the lat-
ter being accompanied by his wife, the complainant in
this cause. That the night before the trial a proposition
came to said Jere H. Reeves and W. N. Reeves and to
their wives, that if they would pay the sum of $11,500
and release the claims of their wives to the dividends
upon the deposits they had in their own names in said
defunct bank, those representing the bank and its cerdit-
ors would use all their influence and do all they could to
have the said indictments *nol prossed* and the prose-
cutions dismissed. That Jere H. Reeves had no means
with which to make said settlement, and complainant was
importuned to come to his relief. That complainant, in-
duced by the consideration of the release of her said
husband from further prosecution, finally consented to
release her claim to deposits in said bank and to sign
a note for $5,000 with her husband, securing the same
by the mortgages aforesaid. The bill then charges that
the consideration of said mortgages was security for a
debt of the husband, his release from criminal prosecu-
tion and the fear, coercion and restraint operating upon
her by reason of said prosecution. Subsequently, in
June, 1894, said mortgage debt being due and unpaid
and said criminal prosecutions still pending, the same
having been continued from time to time for various
reasons, complainant was informed that if she would
raise the sum of $4,500, she would be released from her
alleged debt to Clayton, receiver, and Merrill & White,
trustees; whereupon appellant approached Ira Lamp-
ley, the defendant, for the purpose of obtaining the said
sum, and the defendant was also approached by Clayton,
receiver, in the matter, after which he consented to make

the loan.    That pending the negotiations with defendant he told complainant's husband that unless complainant satisfied said mortgages to Clayton, receiver, and Merrill & White, trustees, the criminal prosecution would be vigorously pushed against him and that defendant knew the purpose of the loan from him was to settle the criminal prosecutions.    That before accepting the security from complainant, the defendant demanded that additional property, known as the Arlington hotel in Eufaula, should be placed in his mortgage, beside the Cowikee plantation, upon which only she had given the mortgage to Clayton, receiver, and Merrill & White, trustees.    The bill further charges that at the time of the execution of the mortgage to defendant, he well knew the consideration of the first mortgages, and that they were not valid against complainant, and it further charged that she received no consideration for the same whatever.

The answer of said Lampley denies each and every allegation contained in the original bill, which avers or tends to show that his mortgage or that the mortgages to Clayton, as receiver, and Merrill & White, trustees, were given to stop said criminal prosecution, and avers that the said mortgage to Lampley was given for the loan of $4,500, made by him to said Lizzie G. Reeves on the 21st day of June, 1894, together with the interest thereon at 8 per cent. per annum, as expressed in said mortgage. He denies in his answer that he had anything to do with the said criminal prosecution of said J. H. Reeves, in any manner, shape or form, and that his mortgage truly and honestly recites the consideration thereof.    He also avers in his answer that the said $4,500 advanced by him to said Lizzie G. Reeves was advanced to and used by her in the settlement and compromise of said two mortgages made to Clayton, receiver, and Merrill & White, trustees, and that said mortgages to Clayton, receiver, and Merrill & White, trustees, were made for the compromising and settlement of certain chancery suits then pending in the chancery court of Barbour county against said Lizzie G. Reeves and others, and also to settle certain indebtedness that was

[Reeves v. Lampley.]

claimed by the New York banks from said Lizzie G.
Reeves on account of certain properties that had been
given to her by her father, John McNab, the president
of and a stockholder in the John McNab bank.

There was evidence introduced on the part of the com-
plainant tending to prove the facts as averred in her bill,
and on the part of the defendant the evidence tended to
prove the facts averred in his answer.

On the final submission of the cause the chancellor
decreed that the complainant was not entitled to the
relief prayed for, and ordered the bill dismissed.   From
this decree the complainant appeals, and assigns the ren-
dition thereof as error.

W. C. OATES and S. H. DENT, JR., for appellant.—An
agreement induced or brought about in any way to
stifle a criminal prosecution is void.—*Buck v. First Nat.
Bank,* 27 Mich. 293; s. c. 12 Am. Rep. 189; *Woodward
v. Bennett,* 43 N. Y. 273; s. c. 3 Am. Rep. 706; Green-
hood on Public Policy, p. 453-5.   A contract, the con-
sideration of which is partly legal and partly illegal,
is vitiated in its entirety, unless the good can be clearly
separated from the bad.—*Pettitt v. Pettitt,* 32 Ala. 288;
*Handy v. Pub. Co.,* 4 L. R. A. 466.   Money lent to en-
able one to compound a felony, or stifle a criminal prose-
cution, is not recoverable.—*Lee v. Boyd,* 86 Ala. 283;
*Haley v. Bibb,* 69 Ala. 52; *Plumer v. Smith,* 5 N. H. 553,
s. c. 22 Am. Dec. 478; *Raymond v. Leavitt,* 41 Am. Rep.
170.   If the wife is induced into a transaction under the
influence of fear of punishment of her husband, and her
motive was his relief, a court of equity will intervene
and restore her to the condition in which she was when
induced into the transaction.—*Holt v. Agnew,* 67 Ala.
360.

The doctrine of *in pari delicto* has no application be-
cause of the duress operating upon appellant by reason
of the marital relationship to the person under indict-
ment, the fear of his punishment, and also because no
indictable offense was committed by either party.—2
Pomeroy's Eq. Jur., § 942; Case and note reported in
26 L. R. A., 48, *Holt v. Agnew, supra.*   One of

[Reeves v. Lampley.]

the considerations consisted in the agreement to pay the husband's debt, which, of course, is void even in the hands of an innocent purchaser, and appellee is charged with notice thereof because the consideration is stated upon the face of the paper which was read by Lampley's attorney in investigating the title for him.—*Lansden v. Bone,* 90 Ala. 446.

A check payable to a married woman or bearer must be indorsed by her and her husband.—*Nelson v. Bank,* 105 Ala. 180.

No estoppel can be invoked against a married woman when legal requirements are not fulfilled.—*Harden v. Darwin & Pulley,* 77 Ala. 472.

A. H. MERRILL and G. L. COMER, *contra.*—"If men in consummation of frauds employ instruments binding and conclusive in their legal operation and effect, it is sound reason, good policy, sheer justice, to leave them where they have placed themselves, bound as they have bound themselves, without assistance from the courts to unloose them, when it becomes their interest to be unloosed, encouraging them and others to commit similar frauds."—*Clark v. Colbert,* 67 Ala. 92; *Moog v. Strang,* 69 Ala. 98; *Black v. Manning,* 1 Ala. 449.

If the contracts between Clayton, receiver, and White & Merrill, trustees and said Lizzie G. Reeves had been void upon the ground that they were made to compound a felony, and Lampley had known that fact, his mortgage is, nevertheless, valid for the reason that the contract with him was a consummated contract. It would be, stating it most favorably for the appellant, that she borrowed the money from Lampley to discharge an illegal debt, similar to where, "if one man borrow money to pay a gambling debt, it may be recovered, although it might be otherwise if the loan was made to gamble with." Above is a quotation from *Hughes v. Young,* 25 Ala. 483. See also *Lea, Admr., v. Cassen,* 61 Ala. 312; *Armstrong v. Toler,* 11 Wheat, 258; *Armstrong, Receiver, v. American Exchange Bank,* 133 U. S. 433.

The compromise and settlement of the suit pending in chancery of H. D. Clayton, receiver, etc. v. Lizzie G.

Reeves, and the compromise and settlement of the claim honestly asserted by the New York banks against Lizzie G. Reeves, *et als.*, was sufficient consideration for the mortgages made by said Lizzie G. Reeves to said Clayton, receiver, and Merrill & White, trustees.—*Allen v. Prater*, 30 Ala. 458; *Wyatt v. Evins*, 52 Ala. 285; *Troy v. Bland*, 58 Ala. 197.

To make a contract void as being founded upon an illegal consideration, both parties to the contract must participate in the illegal consideration. In other words, Mrs. Reeves must have executed the mortgage for the purpose of compounding a felony against her husband, and Lampley must have loaned his money to her for the purpose of enabling her to compound said felony. If she participated in the illegal consideration and he did not, then the contract is valid.—*Bibb v. Allen*, 149 U. S. 481; *Marbury v. Brooks*, 8 Wheat. 556.

SHARPE, J.—The sole consideration for which the complainant gave the mortgage she now seeks to avoid was money borrowed by her from the defendant. It appears from the proof that the purpose for which the money was borrowed and used was to pay off two outstanding mortgags which the complainant had formerly given to other parties with which the defendant had no connection. On the part of complainant it is claimed that they were given to procure the dismissal of certain prosecutions then pending against her husband and which had been continued without dismissal until after she made the mortgage to the defendant. On the other hand, it is claimed that the former mortgages were given in satisfaction of certain claims which were being asserted as liabilities against her property and without regard to the criminal prosecutions. Whatever infirmity may have infected those mortgages, whether on account of illegality of consideration or undue influence used in their procurement, was entirely dissociated from the execution of the defendant's mortgage.

The defendant not being in privity with the former mortgages and claiming no rights through them, his rights are not affected merely by his knowledge, if any

he had, of defenses which may have existed as against them, and therefore it is unnecessary for us to pass. upon the validity of the mortgages taken by them.

The only question here is whether the complainant was unduly influenced to execute the defendant's mortgage. It appears from the evidence that before obtaining the loan from the defendant, complainant had been counselled by her friends to settle the mortgages, not only by way of clearing her property from them, but also as the best policy to be pursued in appeasing the public and getting rid of the criminal prosecution. She lacked the money wherewith to settle the mortgages, and applied to the defendant for a loan. She testifies in substance that the defendant responded by demanding more than legal interest, and that "he told me that the state of public feeling was such that unless the matter was arranged by the next term of court, that my husband would be treated the same as W. N. Reeves had been," and W. N. Reeves had been convicted, though the judgment had been reversed. The result of that interview was a failure to get the money, and complainant then applied to Mr. Clayton for a loan. Clayton declined to lend, but offered to intercede for her with the defendant, and she testifies that thereafter, "through Clayton's solicitation and influence, Mr. Lampley, the defandant, finally agreed to let us have $4,500 at 8 per centum."

There was no fiduciary relation existing between these parties and, excepting in the statement complainant imputes to the defendant with reference to the prosecution of her husband, nothing appears in the record which could be construed as an effort on his part to obtain the mortgage. Nor does it appear that he knew of or took advantage of any such efforts on the part of others or that he derived any profit in the trade other than the promise of legal interest, which is certainly not an illegal advantage.

Instead of pressing the loan, defendant exhibited reluctance in agreeing to it, and it would seem that he was the party who had to be influenced to consummate the loan.

[Crook, Judge, &c. v. Webb.]

The complainant could not have understood the defendant to threaten her husband, for he had no control over the prosecution. Doubtless he was solicitious for her husband's good name and liberty, and it may be that she was to an extent influenced to borrow money by the suggestions coming to her about the policy of settling the civil demands. But it is evident that in borrowing the money she was acting advisedly and of her own volition, induced by the stress of circumstances, rather than of undue personal influence availed of by the defendant. Such conditions afford no ground for relief.—*Holt v. Agnew*, 67 Ala. 360.

Influence, to be undue in the sense which may make a contract voidable, must be such as wrongfully dominates the will of the person subjected to it, and in a measure substitutes therefor the will of another, thereby inducing such person to do what he would not otherwise have done.—*Waddell v. Lanier*, 62 Ala. 347; *Dunlap v. Robinson*, 28 Ala. 100; 2 Pom. Eq. Jur., § 951 and note 1; 27 Am. & Eng. Encyc. Law, 453.

Let the decree be affirmed at appellant's cost.