# DUNLAP ET AL. *vs.* ROBINSON.

[TRIAL OF ISSUE CONTESTING THE VALIDITY OF A WILL.]

1. *Error without injury.*—In contesting the validity of a will, the sustaining of a demurrer to one of the contestant's pleas, when he had the full benefit of the same facts under the issues presented by his other pleas, is not an available error.

2. *Admissibility of evidence in rebuttal of facts tending to show adulterous intercourse.*—The contestants, for the purpose of showing an adulterous intercourse between the testator and the mother of the children who were his legatees, having adduced evidence of his intimacy with her and her family, his visits to her house during her husband's absence, his familiarity with the children, his presents to them, &c.; *held,* that the proponent might rebut this proof by evidence showing that their intercourse was characterized by a religious sentiment, such as the fact that they frequently attended class-meetings together at church.

3. *Provision by will for illegitimate children not void.*—There is no rule of law, and no reason founded either in morals or in public policy, which prohibits an unmarried man from making provision by will for his illegitimate children.

4. *Burthen of proof.*—On the trial of an issue to test the validity of a will, the *onus* is on the proponent to show the testator's capacity and the due execution of the will; and when these facts are established, it then devolves on the contestants to show fraud or undue influence.

5. *What is undue influence.*—Undue influence, such as will vitiate a will, must in some degree destroy the testator's free agency, and constrain him to do that which is against his will, but which he is unable to refuse, or to weak to resist; it is not enough that the testator's own misconduct may have brought about a condition of things, which, operating as a moral inducement on his mind, may cause him to make a disposition of his property which, under other circumstances, he might not have made.

6. *Charge held erroneous as tending to mislead the jury.*—A charge which assumes that an immaterial question of fact is an issue to be tried and determined by the jury, is well calculated to mislead them by withdrawing their minds from the true issues in the cause, and may for that reason be refused.

7. *Charge held erroneous, and therefore properly refused.*—A charge, as asked, held to have been properly refused, because, if the fact assumed in it was true, the charge was abstract, and, if untrue, it did not conform to the evidence.

APPEAL from the Circuit Court of Macon.

Tried before the Hon. ROBERT DOUGHERTY.

IN THE MATTER of the last will and testament of David Dunlap, deceased, which was propounded for probate, on the

18th September, 1852, by James J. Robinson, who was the father of the beneficiaries provided for in it, and was contested by the appellants, who were the brothers and heirs-at-law of the testator. The venue was changed, on the application of the contestants, from Chambers to Macon county, where a trial was had at the October term, 1854, of the circuit court. The paper propounded for probate was dated July 25, 1852, and was attested by three witnesses. By its terms the testator gave all his property, both real and personal, amounting in value to about $20,000, to the four children of said James J. Robinson and Mary his wife; reserving to their mother a life estate in two of the slaves, and appointing their father his sole executor.

The contestants filed nine specifications, or pleas, against the probate of the will, which were, in substance, 1st, " that said paper is not the last will and testament of said David Dunlap, and ought not to be admitted to probate as such"; 2d, that said paper is not the last will and testament of said David Dunlap, " but is the offspring and result of fraud practiced upon him"; 3d, " that said paper is not the last will and testament of said deceased, but is the direct offspring and result of insane delusion, existing in his mind at the time he signed, delivered, and published the same as his last will and testament"; 4th, " that said paper is not the last will and testament of said deceased, but is the direct offspring and result of undue influence, exerted and exercised over his mind and will"; 5th, " that said David Dunlap, at the time he subscribed said instrument, was not of sound and disposing mind and memory, but was of unsound mind"; 6th, " that said instrument contains a disposition of his property materially different from the disposition which said deceased would have made, if, at the time he signed and published the same, he had been free from importunity, undue influence, and fraud, and that he was not at that time free from importunity, undue influence, and fraud"; 7th, " that said instrument was never executed, nor attested, as the last will and testament of said deceased, and is not his last will and testament, and ought not to be admitted to probate as his last will and testament"; 8th, " that said instrument, and its signing by said deceased, were procured by undue influence exerted over him, and that

without such undue influence he never would have signed it";
and, 9th, " that said instrument is not the last will and testa-
ment of said deceased,—that his signature thereto was pro-
cured by illegal means, and contrary to law, and by undue
influence, and that the apparent sanction given to said instru-
ment by said deceased was procured by an illegal and im-
moral consideration, and by undue influence, and contrary to
public policy." The court sustained a demurrer to the third
plea, and issue was joined on the others.

All the evidence adduced on the trial is set out in the bill
of exceptions, but it is unnecessary to state it in detail. The
proponent proved the due execution of the will, and the tes-
tator's mental capacity at the time of its execution, by the
three subscribing witnesses. Evidence was introduced by
the contestants to prove that an adulterous intercourse had
subsisted for many years between the testator, who was an
unmarried man, and Mrs. Robinson, the mother of the lega-
tees. It was proved that the deceased and said James J.
Robinson had lived near each other, from the year 1835,
before the birth of the oldest child, up to the death of the
former ; that their houses were only a few hundred yards
apart; that Robinson was a volunteer in the Creek war in
1836, and was absent from home during the months of June,
July, and August ; that he came home for a few days, during
those months, about once in three weeks ; that his wife went
over to Dunlap's house, and remained there during her hus-
band's absence ; that her husband found her there on his
return, and did not seem to be displeased at it; that the
eldest child was born in April, 1837 ; that when Robinson
was absent from home at night, Dunlap went over and slept
at his house ; that he was very intimate with the children,—
allowed them to sleep with him, made them frequent presents,
sometimes paid their tuition bills, &c., &c. One of the wit-
nesses for the contestants testified to acts of familiarity be-
tween Dunlap and Mrs. Robinson ; and another, that he had
heard Dunlap admit that the children were his.

" The proponent offered to prove that, between 1840 and
1852, Dunlap frequently went to the class-meetings of the
Methodist church in his neighborhood with Mrs. Robinson.
The contestants objected to this proof, as illegal and irrele-

vant ; but the court admitted it, and they excepted. The proponent offered to prove the character of Mrs. Robinson in the neighborhood in which she lived, and that it was good ; but the court, on the motion of the contestants, excluded this evidence." One of the subscribing witnesses to the will testified, " that, soon after the deceased signed the will, witness desired to know what were his hopes as to the future, and asked him as to such hopes ; and that the deceased answered, that all was right,—that he felt clear and joyful."

The court gave the following charges, at the request of the proponent's counsel, to each of which the contestants excepted—viz :

" 1. That although the jury may believe that the persons provided for in the will are the illegitimate children of the testator, and the offspring of adulterous intercourse between him and Mrs. Robinson, and that the object of the testator in making his will was to provide for his said illegitimate children, then the will is not void on account of such adulterous intercourse.

" 2. That if they believe that the testator was of sound mind and memory, and made the will of his own free will, and not in consideration of future cohabitation with Mrs. Robinson, they must find in favor of the will, although they should believe that the children provided for in the will are the offspring of adulterous intercourse between the testator and Mrs. Robinson previous to the making of said will.

" 3. That the burthen of proof is on the contestants, to show that the will was procured by undue influence, or by fraud, or by any agreement.

" 4. That adulterous intercourse itself is not that which the law calls undue influence, which will invalidate a will."

The contestants requested the following charges :

" 1. That if the will now propounded for probate is the direct offspring and result of long-continued sexual intercourse between the testator and Mrs. Robinson, and of an influence acquired by her over said testator by such sexual intercourse, *and influence said testator never would have made any such disposition of his property as is made by the provisions of said will,*—then, upon this state of facts, the jury must find for the contestants. The court refused this charge, and the contestants excepted.

2. That, in determining whether the testator in his lifetime had sexual intercourse with Mrs. Robinson, the jury cannot consider what he said as to his hopes for the future at the time he signed the will, as testified to by one of the subscribing witnesses to the will. The court refused to give this charge, and the contestants excepted.

" 3. That there is no proof before the jury as to the character of Mrs. Robinson, and they cannot consider of her character in determining whether she did not have sexual intercourse with the testator. The court refused this charge, and instructed the jury, that they might infer what the character of Mrs. Robinson was from the evidence in the cause ; and the contestants excepted, both to the charge given, and to the refusal to give the charge asked."

The sustaining of the demurrer to the contestants' third plea, the admission of the evidence to which they objected, the charges given, and the refusals to charge as asked, are now assigned for error.

JAS. E. BELSER and GEO. W. GUNN, for the appellants.
CLOPTON & LIGON, contra. (No briefs on file.)

CHILTON, C. J.—1. The first assignment of error, namely, that the court should have overruled the demurrer to the contestants' third plea or specification, cannot be sustained ; first, because the issue is to be "made up under the direction of the court", (Code, § 1634); and, secondly, because, if the insane delusion went to the whole will, the contestants have had all the advantage of it under the 5th specification ; but if only to a portion of the will, it is too indefinite, and therefore bad. It is clear, however, that any valid objection to the will, by reason of want of sanity of mind on the part of the testator, could have been urged under the issues which were before the jury ; so that the contestants, having had the full benefit of all their proof, which could have availed under the third plea or specification, have not been injured, and cannot complain.—Shehan v. Hampton, 8 Ala. Rep. 942; McKenzie v. Jackson, 4 ib. 230; Rakes v. Pope, 7 ib. 162; Reav. Digest, p. 319, § 71, and cases there cited.

2. The contestants took a very wide range in their efforts to impeach this will. One attempt was to show that proponent's wife had procured him to make it, in consideration of her admitting him to have adulterous connection with her. To establish this fact, many questions are propounded to witnesses by the contestants—his intimacy with the family ; his staying all night at Robinson's house when he was absent ; his intimacy with the children of the family ; whether they did not sleep with him ; whether he did not make presents to them and to their mother, &c., &c. Now, to rebut any presumption, attempted to be raised by such circumstances, of an adulterous intercourse between the supposed testator and Mrs. Robinson, it seems to us entirely proper for the other side to be allowed to prove circumstances *tending* to show that their intimacy was characterized by religious sentiment, if it was not the result of a common religious sympathy. The fact that they frequently went together to the class-meetings of the Methodist church, during the time of their alleged illicit intercourse and intimacy, tends to show that such intimacy was prompted by a sentiment of a virtuous, religious character, and was not meretricious. True, the spirit of evil may invade the most sacred precincts, and men may be hypocrites,—may put on the garb of religion as a cloak for the vilest enormities ; yet these are exceptions. Whatever may be said by the unjustly censorious, experience demonstrates that such meetings are usually frequented by the good and the virtuous, as a means of spiritual improvement, and are anything but agreeable resorts for the wicked and abandoned. Under the view we have taken of this evidence, as merely rebutting the presumption of improper conduct as arising out of the intimacy between the parties, we think it was properly received.

3. Every person of sound mind, and who labors under no legal disability, has the right to dispose of his property by will as he pleases ; and whether his will be prompted by partiality, pride, or caprice, is immaterial, if the will is not obtained by fraud or undue influence.—Coleman v. Robinson's Exrs., 17 Ala. Rep. 88. There is certainly no reason, founded either in morals or public policy, why a man who was never married, but who had children, the offspring of an

8

adulterous sexual intercourse, should not provide for them. Our law compels the putative father to provide for his bastard children ; and the policy which lies at the basis of such legislation would no less sustain a voluntary provision made by one who had violated the marriage bed in their procreation. The books furnish many cases of provision by will for illegitimate offspring ; and if this was the testator's object in the will before us, we know of no case which holds the will void for that reason.—See Jarman on Wills, vol. 2, pp. 93 to 112. The first charge given was, therefore, free from objection. The same reasoning equally applies to the second charge, and shows that it is free from error.

4. The third charge asserts, that the burthen of proof is on the contestants to show that the will was procured by undue influence, or fraud, or agreement. The *onus probandi* is on the party propounding the will, as to his testator's capacity to make a will, and its due execution by him. When this proof is made, the *onus* is generally discharged, (Cranmer v. Crumbaugh, 3 Maryland Rep. 491); and if the contestants say there was fraud or undue influence, the *onus* is upon them to show these, as asserted in this charge.—Jarman on Wills, vol. 1, pp. 72, 73, note 5, 2d Amer. ed.

5. If we rightly comprehend the first charge prayed for by the contestants, it was property refused by the court, for reasons similar to those before stated. It assumes that, "if the will is the direct offspring and result of long-continued sexual intercourse between the testator and the mother of the legatees, Mrs. Robinson, and of an influence acquired by her over him by such intercourse, and but for such influence he would not have made such disposition of his property as is made by this will, then they must find for the contestants." It will be observed that the charge does not proceed upon the idea that Mrs. Robinson actively interfered in procuring the will to be made, using an influence which deprived the testator of the freedom of disposing as he pleased of his estate ; but that if the testator chose, or was disposed to give the property as by this will it is appropriated, in consequence of his long-continued sexual intercourse with Mrs. Robinson and the influence which she acquired over him by reason of such intercourse, then the will is void. In other words, to

Dunlap et al. v. Robinson.

give a simpler illustration of the idea, if a man, who is un-married and living the life of a bachelor, prostitutes a woman, violates the marriage bed, and, after many years of continuous illicit cohabitation, is influenced by the silent operation of these circumstances to make provision by his will for her children, who may be the issue of such illicit inter-course, the will is void. Such is not the law. The case of Farr v. Thompson, Cheves' Rep. 37, is a much stronger case than the one presented by the charge, and yet a provision for the prostitute was held valid. Undue influence, as that term is understood in this connection, must be such as, in some measure, destroys the free agency of the testator, and pre-vents the exercise of that discretion which the law requires a party should possess as essential to a valid testamentary disposition of his property. It is not enough that by the tes-tator's own improper conduct he has brought about a condi-tion of things, over which, at the time of making his will, he had no control to change or remedy, but which, as a moral inducement, operated upon his mind, influencing him to make a disposition of his property which, under other circum-stances, he might not have made. If the testator was guilty of the enormity attributed to him in the charge, of continuous shameful intimacy with a married woman for many years, it would certainly not tend to mitigate his offence, should he have a spurious offspring dependent on her or her husband for support, to cast them pennyless upon the world. He may well be influenced, under such circumstances, by a desire to repair the injury he has done, so far as he can do so, by pro-viding for their education and support. If, however, the will was made in consideration of promises of future illicit cohabitation, it would be clearly void. This, however, is not the point of the charge.—See, as to the question of undue influence, Gilbert v. Gilbert, 22 Ala. Rep. 529; 1 Rich. Rep. 80; 1 Speers, 93. To vitiate a will, it must be such as, in some degree, to destroy the free agency of the testator, and constrain him to do what is against his will, but what he is unable to refuse or too weak to resist.—1 Jarman, (2d Amer. ed.) p. 36.

6. The second charge prayed for by the contestants was properly refused by the court. It was well calculated to

mislead the jury, withdrawing their minds from the true issues in the cause, and making the validity of the will depend, by implication, upon an immaterial issue,—namely, whether the testator had illicit intercourse in his lifetime with Mrs. Robinson. It assumes that that is an issue to be determined,—a fact to be found, one way or the other, by them. Indeed, it is properly a part of the preceding charge, on which it is predicated, which sought to obtain a judicial announcement to the jury of the effect of such cohabitation upon the will, and to obtain for it an effect which we have seen it could not properly exert. Having, by the first charge, settled upon the legal effect, the second is proposed as limiting the means for its ascertainment; that is, in determining whether the parties had sexual intercourse, the jury must not regard what the testator said at the time he made his will as to his spiritual condition,—" his hopes for the future." Now we have shown that such intercourse, though it gave rise to the will as furnishing a motive to provide for offspring, or to repair a wrong, does not invalidate the will. Indeed it tends to strengthen it, since otherwise the testator might be left without a rational motive for selecting strangers instead of his relatives as the objects of his bounty. But, be this as it may, it is certain no injury resulted to the contestants from the refusal of the court to give the charge, since, let the fact of adultery be found one way or the other, it can make no difference as to the result of this cause, the record showing no effort on the part of Mrs. Robinson to procure the making of the will, or the exertion of any influence which she may have possessed over him in consequence of such alleged intimacy or otherwise, to induce him to exclude his kindred, and to make the provisions which are made in the will before us.

7. The contestants, in like manner, have not been injured by the refusal of the third charge prayed for by them, further restricting the jury in their inquiry as to the alleged adulterous connection. But its refusal is not erroneous for other reasons. If there was any proof of Mrs. Robinson's character, the charge asserting that there was none should have been denied, for want of conformity to the true state of the evidence. If, however, it was true that there was no proof, then the charge is purely abstract, and rightly refused for

Dunlap et al. v. Robinson.

that reason. But, if it was intended to affirm that the law raised no presumption that the lady was virtuous and not guilty of adultery, requiring the opposite party, if they alleged adultery, to overcome that presumption by proof, it was incorrect as a proposition of law. In either aspect, it was properly refused. If the character of Mrs. Robinson was the legitimate subject of inquiry for the jury, they were very properly told to ascertain it from the evidence in the cause. If it was foreign from the issue, the charge was abstract, and did no injury to the contestants; and consequently it should not be the ground of reversal.

We have considered all the grounds assigned for error; and are of opinion, that in none of them did the circuit court mistake the law to the prejudice of contestants.

We would take occasion, in conclusion, to say, lest we should be misunderstood with reference to the facts of this case, that our remarks respecting the illicit intercourse of the testator and Mrs. Robinson, and the illegitimacy of the four children who are the beneficiaries in this will, are predicated upon the state of facts assumed by the charges, and not upon our view of the evidence as contained in the record. The counsel have a right to ask for instructions from the court as applicable to any state of the case which the proof *tends* to establish; and in this aspect alone have we considered them. We should be sorry to be understood as affirming that the record exhibits any want of fidelity on the part of Mrs. Robinson towards her husband, or that the children provided for in this will are not legitimate. True, there are circumstances of familiarity and intimacy shown by one or two witnesses, which, unexplained, might furnish strong ground for suspicion, but which, when we consider the long and peculiar friendship existing between the parties, and that this bachelor was treated as a member of Mr. Robinson's family for many years, accustomed to the familiarities, and interchanging the kindly offices which obtain among near relatives, lose much, if not all of their force, and may consist with the most upright deportment.

Let the judgment be affirmed.

RICE, J., having been of counsel, did not sit in this case.