## POOL'S HEIRS *vs.* POOL'S EXECUTOR.

[CONTEST AS TO VALIDITY OF WILL.]

1. *What constitutes undue influence.*—The refusal of the court to give the several charges asked in this case, on the subject of undue influence, tested by the rules established by previous decisions, and held correct.
2. *Abstract charge.*—An abstract charge is properly refused.
3. *Undue influence mixed question of law and fact.*—Undue influence is not a question of fact for the determination of the jury, but a mixed question of law and fact; or, rather, a conclusion of law from facts in proof.

4. *Charge on sufficiency of evidence as to attestation of will.*—A charge to the jury, asserting that, "if the evidence does not affirmatively show that the subscribing witnesses to the will signed it in the presence of the testator, but only leaves the matter in doubt as to whether they did so attest it, then the jury should find against the will,"—held to have been properly refused.

5. *Emancipation of slaves by will.*—The case of *Atwood's Heirs v. Beck*, 21 Ala. 590, respecting the validity of a testamentary direction to an executor to carry slaves to a non-slaveholding State and there emancipate them, re-examined and re-affirmed.

APPEAL from the Probate Court of Dallas.

IN the matter of the last will and testament of Ephraim Pool, deceased, which was propounded for probate by George L. Stewart, the executor therein named, and contested by the decedent's heirs-at-law and distributees. No formal issue was made up, but, by consent of counsel, it was agreed "that any question or issue might be considered as duly made and presented, which would test the validity of the will or any provision thereof, and that all pleading and special issues were waived."

The material portions of the will were in the following words: "1. I wish all my just debts paid. 2. I will and bequeath my slaves, Harriet, Eliza, Laura, John and Will, to my executor, hereinafter named, in trust that he wil take them to Cincinnati, in the State of Ohio, and there set them free; furnishing them, at the same time, some permanent and comfortable place of abode. 3. It is my will and desire, that within a reasonable time, or as soon as can be done after my death, my executor sell all of real and personal property not hereinbefore devised to be emancipated in Ohio, and a negro boy (Monroe) I give to my executor, as a mark of respect for him, for cash; and the proceeds of such sale, after paying all reasonable expenses for the transportation of said slaves to Cincinnati, and their settlement there as aforesaid, as well as reasonable commissions to my executor, to be placed in some solvent bank in Cincinnati, for the use of the said Harriet, Eliza, Laura, John and Will, during the life o the said Harriet; to be drawn upon and checked for by said Harriet, as their several and joint necessities may require; and after the death of the said Harriet, the said

Eliza, Laura, John and Will, or such of them as may be then living, or his, her or their heirs or representatives, shall receive from said bank, and enjoy the same in equal parts. 4. It is my wish that my friend George L. Stewart act as my executor, and I hereby make, constitute and appoint him such. In witness whereof," &c.

The evidence adduced on the trial, all of which is set out in the bill of exceptions, requires no particular notice, as the legal questions involved are held to be covered·by the former decision, in 33 Ala. 145.

The contestants requested the court, in writing, to charge the jury as follows :

"1. That if they believe from the evidence that the will was the result of Pool's attachment to the slave Harriet as his mistress, then undue influence may be presumed by them from slight circumstances, and positive proof of actual interference on her part is not required, in order to authorize them to find against the will.

"2. That if the will is the result of an undue attachment on the part of Pool, to his slave Harriet as his mistress, and of ·his adulterous connection with her, and not as his slave as such, then such attachment and intercourse are sufficient ·to establish undue influence, and to invalidate the will.

"3. That if the jury believe from the evidence that the attachment of Pool to his slave Harriet as his mistress, and to the others provided for by the will as his children, and not as his slaves, influenced him to make the will, then such attachment would be sufficient to raise a reasonable presumption in the minds of the jury that the will was procured by undue influence.

"4. That if the jury believe from the evidence that Pool made his will out of spite to his brothers and sisters, because they would not associate with him on account of his living in adulterous intercourse with negro women, and, for this cause, bestowed his property on his mistress, Harriet, and four of his mulatto children,—this would be evidence for the jury to consider whether he was acting under such an insane delusion as to his brothers and sisters, as would render his will invalid.

" 5. That if the jury believe from the evidence that Pool made his will out of spite to his brothers and sisters, because they would not associate with him on account of his living in adulterous intercourse with his negro women, this would not be, in law, a sufficient reason to exclude them from the enjoyment of his property.

" 6. That if the jury believe from the evidence that Pool, in making his will, was acting under an undue prejudice against his brothers and sisters, because they would not associate with him on account of his adulterous intercourse with his negro women, then they may look to all the circumstances in evidence, to see whether Harriet influenced this prejudice; and that if they find she did, and that the will was made under this prejudice, and was the result of it, then they may infer such undue influence as may invalidate the will.

"7. That if the jury believe from the evidence that Pool's capacity, when he executed the paper offered for probate, was doubtful; and that he was then in a dying condition; and that the will is unnatural in its provisions; and that the testator, at the time he made it, was under a degrading and unnatural influence, exerted over him by some of his slaves, whom he attempted to emancipate by his will; and that such influence was exerted over him by means of his constant adulterous intercourse with said slaves; and that the will was the result and offspring of such intercourse,—then they are authorized to find that the will was procured by undue influence, as to those provisions which are in favor of such slaves and their increase, and to find for the contestants as to those provisions of the will; and if the entire will was the result of such undue influence, they are authorized to find for the contestants on the entire will.

" 8. That if the jury should believe from the evidence that Pool's capacity at the time he made the will, looking alone at the direct evidence on that subject, was doubtful; yet, if they believe that the will is not consonant with the testator's natural affection, and that it was made but a short time before his death, and was the result of a degrading and unnatural influence exerted over him by

his slaves, or any of them, with whom he lived in adulterous intercourse, then they would be authorized to find that the paper offered for probate was not the result of a sound and disposing mind on the part of the testator, and, consequently, to find in favor of the contestants.

"9. That the question of undue influence is a question of fact, for the jury to determine upon all the evidence before them; that it is not necessary that the influence should be exerted by any direct means at the time the will is executed, but it is sufficient if previously exerted, and continued up to the time of the execution of the will; that if the jury believe that, from a long adulterous intercourse with his slaves, the testator's natural affections had become depraved and perverted, and his mind had become thereby impaired, as also by the frequent and excessive use of ardent spirits, and that the will was executed while he was in his last sickness, and nigh unto death,—then they are authorized to infer that a less degree of influence would overcome his will, and bias his mind, than if he were removed from the operation of such causes.

"10. That undue influence, as recognized by the law, may be either a proper influence, unduly exerted and carried to the extent of moral coercion, or the exertion of an improper influence over a testator, until his will yields to the force of fear or habit, or loses its power of resistance against the seductions of vice, or the suggestions or improper importunities of a guilty companion in a vicious course of conduct; that a will, made under such influence, is not a legal testament; that if the jury believe from all the evidence in the case that, by a long adulterous intercourse between Pool and his slave Harriet, she had acquired such an influence over him as is set forth in the second proposition above stated, and that the will is the result of such influence,—then they should find against the will, no matter how clear and free from influence his mind may have been in other respects, or in regard to other matters, and although the evidence may not show any direct influence exerted over him by said Harriet.

"11. That if the evidence does not affirmatively show that the subscribing witnesses to the will signed it in the

presence of the testator, but only leaves the matter in doubt as to whether they did so attest it, then the jury should find in favor of the contestants.

"12. That if the entire will was made for the sole purpose of carrying out the bequest, therein contained, of freedom to the slaves therein named, then the entire will is contrary to law and public policy in this State, and is void as a will.

"13. That the second item of the will is void, and the jury should find for the contestants on that item.

"14. That the third item of the will is void, and the jury should find the issues on that item in favor of the contestants.

"15. That if the fourth item of the will was made only for the purpose of carrying out the second and third articles, then the same is void, as being opposed to law and public policy in this State."

The refusal of these several charges, to which exceptions were reserved, and the rulings of the court on the evidence, are now assigned as error.

BYRD & MORGAN, for appellant.

GEO. W. GAYLE, *contra*.

STONE, J.—The counsel for appellant have not pressed upon our consideration any questions save those raised by the refusal of the probate court to give the charges numbered 12 to 15, inclusive. Under these circumstances, we propose to make but brief allusion to the questions not pressed in argument.

The questions raised on the introduction of evidence, were all ruled adversely to the appellant, when this case was before this court, at June term, 1858.—See 33 Ala. 145.

What amounts to undue influence, which will set aside a will, has been frequently asserted, and must be regarded as settled in this State.—See Taylor v. Kelly, 31 Ala. 59, and authorities therein cited. Under the rule thus settled, the probate court rightly refused to give the charges numbered 1, 2, 3, 7, 8, 10.

[2.] Charges 4, 5 and 6 were abstract, and were rightly refused on that ground, if no other.—Shep. Dig. 458.

[3.] Charge number 9 is incorrect as a legal proposition. Undue influence is a mixed question; or rather, a conclusion of law from facts in proof.

[4.] Charge number 11 was correctly refused, under the principles declared in Stubbs v. Houston, 33 Ala. 555. Although the testimony, as to the signing by the witnesses in the presence of the testator, may not have been affirmative, and may not have excluded all doubt of such presence; still, that proof was a proper subject of consideration by the jury; and in such case, it cannot be asserted, as matter of law, that the jury must find against the execution of the will.

[5.] The remaining charges may be considered together. They severally question the right of a testator to direct his slaves to be carried beyond the limits of this State, that such slaves may there enjoy their freedom. Against this right it is urged, that it is opposed to the legislative policy of Alabama that slaves should be emancipated—have their value as property destroyed. We have not been able to find any statute, or legislative policy, which prohibits the removal of slaves from Alabama. We have, for many years, had statutes which prohibit, except in a particular way, the emancipation of slaves; and we have a legislative policy against the increase and residence, in this State, of free persons of color.—Code, §§ 2044-47. Under these statutes, all attempts at testamentary emancipation, to take effect within the State of Alabama, have been declared void.—See Evans v. Kittrell, 33 Ala. 449, and authorities cited. The attempt, however, which is manifest in Mr. Pool's will, rests on a very different principle.

In Atwood v. Beck, 21 Ala. 590, the question we are considering underwent a very full consideration by this court. The principal authorities bearing on the question were carefully examined, and this court arrived at the conclusion that, "as between master and slave, aside from all statutory prohibition, the right of manumission exists, and is deducible, not only from the absolute ownership

of the master in his slave as a chattel, but from analogous rules applicable to slavery as it has obtained in every civilized country."

The case of Atwood v. Beck was decided seven years ago. It was followed in the case of Abercrombie v. Abercrombie, 27 Ala. 489. See, also, Tannis v. St. Cyre, 21 Ala. 449. Under these circumstances, even if we doubted its correctness as an original proposition, we would not feel at liberty to depart from it.

We have announced these conclusions, because we have been invited to their consideration by a full discussion of the question. We might have contented ourselves with the announcement, that there are at least some unobjectionable clauses in the will, which justified its probate. See Powell v. Powell, 30 Ala. 697; Taylor v. Kelly, *supra*.

The judgment of the probate court is affirmed.