81 So.2d 670

**Morris B. LOCKE**

v.

**Phillip D. SPARKS.**

**8 Div. 724.**

Supreme Court of Alabama.

June 30, 1955.

Rogers, Howard & Redden, Birmingham, and Starnes & Starnes, Guntersville, for appellant.

H. G. Bailey, Boaz, for appellee.

138

LIVINGSTON, Chief Justice.

Mrs. Jessie Woodham Elder, a resident citizen of Marshall County, Alabama, departed this life testate in Birmingham, Alabama, on or about the 14th day of May, 1949. Her will was offered for probate in the Probate Court of Marshall County, Alabama, on May 18, 1949. On May 31, 1949, Phillip Dean Sparks, an adult son of testatrix, filed in the Probate Office of Marshall County, Alabama, a contest of said will, stating the following grounds for contest:

"1. Because said document is not the last will and testament of said decedent.

"2. Because said alleged will was made and executed by said decedent through duress exercised over her by the proponent Morris B. Locke.

"3. Because said alleged will was made and executed by said decedent through undue influence exercised over her by said proponent Morris B. Locke.

"4. Because said alleged will was made and executed by said decedent while she was by reason of unsound mind incapable of making a will."

The contestant also demanded that the Probate Court of Marshall County, Alabama, enter an order transferring the contest of said will to the Circuit Court of Marshall County, Alabama, and demanding a jury for the trial of the issues raised.

The contest of the will was transferred to the Circuit Court of Marshall County, Alabama, and the issues raised were tried by a jury. On January 13, 1953, the jury returned a verdict finding the issues in favor of the contestant and against the will. The proponent of the will appealed.

At the conclusion of the evidence on the trial of the issues involved, the proponent requested in writing the affirmative charge, but which charge was refused by the trial court.

After a most careful consideration of the uncontroverted facts and circumstances presented by this record, we are clear to the conclusion that under a long and unbroken line of decisions of this court we are duty bound to sustain this unusual disposition of the testatrix's property.

The will in question provided, in substance, that: first, the testatrix's debts and funeral expenses be paid; second, that testatrix's son, Phillip Dean Sparks, receive all her jewelry (this consisted of one ring, and it not valued by the evidence); third, Morris B. Locke receive all the rest and residue of her estate, which the evidence showed consisted of two houses and lots in Boaz, Alabama, and a ninety-acre farm south of Albertville, Alabama, a bank account containing $800, and some other property which was not described in the trial; and, fourth, that Morris B. Locke be named executor of her estate, her will, without bond, or any accounting to any court whatever.

The evidence discloses that Mrs. Elder, the decedent, was in her early forties at the time she died. She had been twice divorced, and was the mother of the contestant, who was her only child, and he by her first marriage.

Morris Locke, the principal beneficiary under the will of Mrs. Elder, was a United States Army Recruiting Sergeant, stationed in the Albertville, Alabama, area. He was married and the father of two children.

It appears that Locke and Mrs. Elder started going together some time in 1946, or something more than a year before her will was executed on October 21, 1947. The evidence further discloses, without dispute, that Mrs. Elder and Locke continued to go together and be seen together until her death.

Attorneys for the appellee in brief on appeal barely insist that the testimony adduced on the trial of this cause is suffi-

cient to justify a jury verdict that at the time Mrs. Elder executed her will she was mentally incapable of doing so under the law. We are clear to the conclusion that the evidence adduced in this cause wholly failed to justify a finding of mental incapacity on the part of testatrix. Without dispute, she was shown to be a woman of some 43 years of age, holding two jobs at the time the will was executed; one in the mornings, from 8:00 until 12:00 o'clock, in a cotton office as bookkeeper, and the other, in the evening as a cashier in a movie theatre. There is no evidence in the record before us from which it can be said that Mrs. Elder at the time she executed her will was mentally incapable of doing so.

Further, there is absolutely no evidence in the record from which it could be inferred that the will in question was not the last will and testament of the decedent, signed and witnessed according to the laws of Alabama.

The principal argument made on this appeal is that the will was executed through undue influence exercised over her by the proponent of the will, Morris B. Locke.

On the issue of undue influence, we here set out, in substance, the evidence most favorable to the contestant: Mrs. Elder and Locke met sometime approximately a year before she executed her will. After the meeting, they spent a great deal of time together. He was seen at her home late at night and early in the mornings. This relationship seems to have continued until Mrs. Elder's death in May, 1949. The two of them took frequent week-end trips together. There is evidence that during the time they were going together Mrs. Elder failed to attend family gatherings, other than visits to her mother, but it further appears that this was due to her family's disapproval of her conduct and of Locke, rather than due to any design on the part of Locke to keep her away from her family. Her son, Phillip Dean Sparks, who was in the Service came home on leave from the Air Force, quarreled with her over Locke, and then took his clothes and moved out of the house. There is further evidence that Mrs. Elder declined in health to some extent, lost weight, and became nervous. She spent some time in a hospital at Albertville about a year before her fatal illness. In October, 1947, Mrs. Elder, her mother, and Locke, drove to Birmingham and during the course of their stay, Mrs. Elder went alone to the office of the lawyer whom she had known for many years, and had the lawyer draw up the will in question. The will was completed and executed in his office on that occasion, with no one present except Mrs. Elder, the lawyer and his father, who was also a lawyer. The two lawyers witnessed the will.

Some six weeks before Mrs. Elder died, she entered a clinic in Albertville. After some time in this clinic, Locke removed her to the home of his sister in Decatur, Alabama. There, members of Mrs. Elder's family visited her. They tried to persuade her to go to another hospital where she could receive better treatment. She persistently declined to go; but prior to her death, Locke carried her to a hospital in Birmingham, where she finally died. After Mrs. Elder was removed to the hospital in Birmingham, Locke continued his attentions to her and was with her much of the time she was there, and until her death.

Other than the actions hereinabove mentioned, there is no evidence whatever in the record before us that Locke exerted any influence over the testatrix to secure the execution of the will in his favor. Indeed, contestant appeared to rely solely upon the relationship existing between Locke and Mrs. Elder to give rise to a presumption of undue influence. The testimony of witnesses and briefs of counsel impute a meretricious relationship to Locke and Mrs. Elder. But assuming the existence of such a relationship, is that alone sufficient to raise a presumption of undue influence? The decisions of this court clearly hold that such a relationship alone is not sufficient to establish undue influence.

In Hobson v. Morgan, 215 Ala. 274, 110 So. 406, it was said:

"The trial court reached the conclusion that petitioner, appellant here, was the paramour of said Frank Mor-

gan, and denied the probate of the will upon that ground. We are of the opinion a detailed discussion of the evidence would serve no useful purpose. Lula Hobson was a teacher in the public schools, and her good reputation in that community is established without conflict or question. That the proof suffices to show an improper interest in one another of these two persons, reprehensible and not to be condoned, is clear, yet, upon a careful consideration of the evidence in consultation, we find ourselves unwilling to hold that this mutual regard had extended to the stage of criminality. But, were the proof sufficient to establish an unlawful relationship, this alone would not warrant a conclusion of undue influence.

" 'There appears to be a general concurrence in the authorities that an illicit relation is not sufficient per se to warrant a conclusion of undue influence, and that no presumption of undue influence arises merely from the fact that a man, who' is of sound mind, makes a will in favor of his mistress, or of one with whom his relations have been meretricious.' 28 R.C.L. p. 148.

"Of course the fact of such illicit relationship is to be considered in connection with any evidence tending to establish undue influence, but is not alone and of itself sufficient evidence thereof. 28 R.C.L. supra; Saxton v. Krumm, 107 Md. 393, 68 A. 1056, 17 L.R.A.,N.S., 477, 126 Am.St.Rep. 393. This is the accepted rule in this state. Dunlap v. Robinson, 28 Ala. 100; Pool's Heirs v. Pool's Ex'r, 35 Ala. 12; Shipman v. Furniss, 69 Ala. 555, 44 Am.Rep. 528. Speaking to this question, this court, in Dunlap v. Robinson, supra, said:

" 'Undue influence, as that term is understood in this connection must be such as, in some measure, destroys the free agency of the testator, and prevents the exercise of that discretion which the law requires a party should possess as essential to a valid testamentary disposition of his property. It is not enough that by the testator's own improper conduct he has brought about a condition of things, over which, at the time of making his will, he had no control to change or remedy, but which, as a moral inducement, operated upon his mind, influencing him to make a disposition of his property which, under other circumstances, he might not have made.' "

In upholding a will naming a white man's colored mistress as beneficiary where contestants contended that the will was a result of undue influence on the part of the mistress, this court in Dees v. Metts, 245 Ala. 370, 17 So.2d 137, 139, said:

"It is the settled law of this State that illicit relationship is not sufficient per se to warrant a conclusion of undue influence. And no presumption of undue influence arises merely from the fact that a man who is of sound mind makes a will in favor of his mistress, or in favor of one with whom his relations have been meretricious. Hobson v. Morgan, 215 Ala. 274, 110 So. 406. The distinction in regard to the question of burden of proof as between a will and a deed is fully discussed in Bancroft v. Otis, 91 Ala. 279, 8 So. 286, 289, 24 Am.St.Rep. 904. Undue influence, it was there pointed out, which will void a will must amount to coercion or fraud; and as there said: 'There must be some proof of these things.' * * *

"Of course, all the cases recognize that undue influence must be sufficient to destroy the free agency of the testator. And persuasion or agrument [argument] addressed either to the judgment or affections, in which there is no fraud or deceit, does not constitute undue influence. Gilbert v. Gilbert, 22 Ala. 529, 58 Am.Dec. 268; Knox v. Knox, 95 Ala. 495, 11 So. 125, 36 Am.St.Rep. 235; 28 R.C.L. p. 140."

It was further stated in Dees v. Metts, 81 So.2d 678 supra, that:

"In 28 R.C.L. p. 137 is found the following: 'Undue influence such as will invalidate a will is not easy to define with precision. It must be such as to control the mental operations of the testator, overcome his power of resistance, and oblige him to adopt the will of another, thus producing a disposition of property which the testator would not have made if left freely to act according to his own pleasure.'

"And in the more recent case of Abrams v. Abrams, 225 Ala. 622, 144 So. 828, 830, concerning the execution of a deed charged to have been produced by undue influence, the Court observed: 'It is not influence, it must be remembered, but undue influence, that is charged and necessary to be proven to overthrow this transaction, and such influence as is the result of sympathy and affection only is not undue influence condemned by the law.'"

The evidence to support undue influence must afford grounds for reasonable inference, not mere suspicion, that the beneficiary has been active in the procurement of the will. East v. Karter, 218 Ala. 366, 118 So. 547. There is no evidence that the favored beneficiary in the case at bar had any part in procuring the execution of the will, or that the testatrix was in any way constrained to devise her property in any way which was inconsistent with her own free will and desires. The contestant failed to carry the burden of proving the grounds of contest as set out in his petition. It was, therefore, error to refuse to give the affirmative charge for the proponent as requested.

Having determined this action of the trial court to be error, we feel it unnecessary to discuss the other assignments of error.

Reversed and remanded.

LAWSON, STAKELY and MERRILL, JJ., concur.