Evelyn Smith, widow of decedent, Willie Dolphus Smith, filed his will for probate, whereupon, Harold Smith, half-brother of decedent, filed a contest which was transferred for trial to the circuit court. A trial by jury on the issues of testamentary capacity and undue influence was had. The jury returned a general verdict in favor of contestant, Harold Smith, upon which judgment was entered and from which this appeal is taken by Mrs. Smith. We reverse and remand.
 Issue
The dispositive issue before us is whether the trial court erred to reversal by refusing to direct a verdict in favor of Mrs. Smith on the issue of undue influence.
 Facts
The evidence discloses that deceased, Willie Smith, executed a will on 9 January 1973 which devised the greater portion of his estate to his half-brother, Harold. A much smaller portion was bequeathed to his wife, Evelyn. Harold testified that Willie had stated that he, Willie, wanted his estate handled according to the 1973 will of which Harold was named executor.
The evidence further discloses that in January of 1976 Willie went to the office of his real estate agent and requested his agent to retype the 1973 will according to the changes he had made on a copy of it. The agent made the requested changes and Willie executed it on 21 January 1976. This new will left almost all of Willie's property to Evelyn and named her as executrix.
The real estate agent who typed the 1976 will testified she had known Willie since he was four or five years old and had handled several pieces of property for him. She testified that Willie read the will before he signed it and stated the will was exactly the way he wanted it. She further testified that Willie and two witnesses signed the will in her presence; further that Willie appeared to be the same man she had known for many years and she noticed no difference in his ability to talk or read, and that she had known Evelyn all her life, although they were not close friends. She stated she had never smelled any alcohol on Willie when he was in her office, although she had heard he had a drinking problem.
Both witnesses who attested the 1976 will testified that they noticed no marked difference *Page 1070 
in Willie's ability to carry on business the day he executed the 1976 will as compared with that ability on other occasions when they had done business with him. Both testified Willie was doing repair work on houses the day he executed the 1976 will. Both also admitted they had knowledge that Willie had a drinking problem.
John Martin McMahon, M.D., one of Willie's doctors, testified on behalf of Harold. He testified Willie had some degree of brain deterioration as early as 1973, although he could still function. Doctor McMahon first began treating Willie in 1962, and later treated him periodically from December of 1972 until early 1977. Prior to 1973 Willie was treated for angina and various other ailments. Dr. McMahon testified that as of March 1973 Willie was drinking a pint of vodka a day for pain.
Dr. McMahon further testified that he did not treat Willie during the period of time between April 1973 and June 1976. He did state he treated Willie in June of 1976 and that Willie had suffered a stroke in the interval on account of which he had been hospitalized. At this time Willie had difficulty with mentation, thought processes, his speech and vision.
Willie was hospitalized from 3 to 16 December 1976. Dr. McMahon testified Willie was admitted to the hospital by an associate, Dr. Edge, because Willie had become unmanageable at home. He further testified that during this period of hospitalization Willie was diagnosed as suffering from generalized hardening of the arteries; chronic brain syndrome (which indicates severe brain deterioration); arteriosclerotic heart disease; severe low thyroid function; and Parkinson's disease.
The doctor stated he could only speculate as to Willie's mental capacity in January of 1976 because he did not see Willie during that time. He did testify that a man in Willie's physical condition in December 1976 would not have had the ability to know the nature of the act he was doing if he signed a will. He further testified he would doubt that Willie would have known what he was doing if he had signed a will in June of 1976. He also stated it would be highly questionable if Willie would have known what he was doing had he, Willie, signed a will on 21 January 1976.
Mrs. Smith testified she and Willie were married 26 June 1969; that she had contacted an attorney in the latter part of 1976 about having some of Willie's property transferred to someone else because he was seriously ill. She said she did not know about the will Willie had made in 1973, but he had brought her the 1976 will for her to read. She went on to say that Willie did not have trouble managing his property until the summer of 1976; at that time Willie asked her to start writing the checks because he was so shaky, but even then he still went over the bills. She further testified she went to see the attorney concerning the property because a social worker at the Veterans Administration Hospital advised her to do so and she did not make the visit until the summer of 1976.
Becky Carter, the daughter of Evelyn Smith, testified she went with Evelyn to the attorney's office to see about changing the title to Willie's property. Becky testified she learned of Willie's 1973 will at the attorney's office. Becky also testified they went to the attorney on the advice of a social worker and the visit to the attorney's office was in the latter part of 1976.
Numerous other witnesses testified concerning Willie's mental state. Witnesses for the contestant testified: Willie had a severe drinking problem; his mental capacity had severely deteriorated; and he suffered from hallucinations. Those witnesses also testified to incidents where Willie had acted irrationally. All such testimony concerned time periods prior to or subsequent to the time the 1976 will was executed. Raymond Carter, Evelyn Smith's son-in-law, testified the only time he thought Willie did not have good business sense was in 1973 or 1974 when Willie was drinking heavily and the latter part of 1976 when Willie was on cough medicine which contained alcohol. *Page 1071 
 Decision
Mrs. Smith contends there was not a scintilla of evidence to create a jury question as to undue influence. She therefore argues the trial court committed reversible error by not granting her motion for directed verdict as to that issue and by not granting her written requested charge number seven: "I charge you, ladies and gentlemen of the jury, that you are not to consider the charge of undue influence presented by contestant in determining the validity of the contested will of Willie Dolphus Smith." We agree and reverse.
Harold Smith, the contestant, contends there was a scintilla
of evidence as to undue influence because: (1) Mrs. Smith occupied a confidential relationship (that of wife) with Willie; and (2) the evidence disclosed Mrs. Smith occupied a dominant relationship with respect to Willie due to his weakened mental and physical condition. Harold argues that Willie's weakened condition raises a presumption of undue influence. In support he cites Reed v. Ship, 293 Ala. 632,308 So.2d 705 (1975), and Grady v. Wallace, 272 Ala. 119,130 So.2d 21 (1961). Neither case supports his position.
In Grady v. Wallace, supra, this court quoted from Stanley v.Kelley, 267 Ala. 379, 382, 102 So.2d 16, 19 (1958), as follows:
 "`When a will is contested on the ground of undue influence, the burden is on the contestant, in order to raise a presumption of undue influence, to prove a dominant confidential relationship and undue activity in the execution of the will or for a favored beneficiary. Wilson v. Payton, 251 Ala. 411, 37 So.2d 499; Hyde v. Norris, 250 Ala. 518, 35 So.2d 181. We do not think the appellants have successfully carried that burden.
 "`The controlling principle on the issue of undue influence is that the contestants must show active interference of the beneficiary in procuring the execution of the will. Lockridge v. Brown, 184 Ala. 106, 63 So. 524. To make out the charge, it must be proved that an influence was exerted on the testator which was tantamount to moral coercion and constrained him to do that which was against his will but which from fear, desire of peace, or some other feeling than affection, he was unable to resist. Cox v. Martin, 250 Ala. 401, 34 So.2d 463; Kahalley v. Kahalley, 248 Ala. 624, 28 So.2d 792. * * *'" 272 Ala. at 122, 130 So.2d at 24.
In Grady, this court, per Mr. Justice Lawson, stated the general rule that both dominant confidential relationship and undue activity by a favored beneficiary in procuring the execution of a will must be shown in order to raise the presumption of undue influence that casts the burden of proof on the proponent. Grady in no way supports Harold's position because he produced no evidence of undue activity on the part of Mrs. Smith in procuring the execution of the 1976 will.
Likewise, Reed v. Ship, 293 Ala. 632, 308 So.2d 705 (1975), lends no support to Harold's position. In Reed, there was testimony presented concerning the proponent's undue activity in procuring execution of the will. That testimony showed a female acquaintance, whose children were the beneficiaries of the will, had employed the attorney who drafted the will, excluded persons from the testator, concealed the making of a codicil to the will, and had engaged in illicit sexual relations with the testator. Nevertheless, this court affirmed a directed verdict in favor of the proponent on grounds that no presumption of undue activity in the procurement of the will, amounting to fraud or undue influence, arises from the mere natural disposition of property by the testator to persons he loves. Again, Reed holds there must be some evidence of undue activity on the part of a favored beneficiary of the will in order for the issue of undue influence to become a jury question. No such evidence was introduced in this case.
In Pruitt v. Pruitt, 343 So.2d 495 at 499 (Ala. 1977), this court, per Mr. Justice Beatty, concisely summarized the elements that must be proved in order to sustain an allegation of undue influence:
 "Our cases have consistently held that when undue influence is asserted in a will *Page 1072 
contest, the contestant has the burden, in order to raise a presumption of undue influence, to prove a dominant confidential relationship and undue activity in the execution of the will by or for a favored beneficiary. Wilson v. Payton, 251 Ala. 411, 37 So.2d 499 (1948), citing Hyde v. Norris, 250 Ala. 518, 35 So.2d 181 (1948). In other words, evidence must establish: (1) a confidential relationship between a favored beneficiary and testator; (2) that the influence of or for the beneficiary was dominant and controlling in that relationship; and (3) undue
activity on the part of the dominant party in procuring the execution of the will. Wilson v. Payton, supra; Alexander v. Alexander, 208 Ala. 291, 94 So. 53 (1922).
 "A confidential relationship may spring from `those multiform positions in life wherein one comes to rely upon and trust another in his important affairs.' Raney v. Raney, 216 Ala. 30, 34, 112 So. 313, 316
(1927).
 "Whether the beneficiary, or one acting for him, was the dominant party in the relationship between the two is usually a question of fact, but in any case there must be some evidence of controlling influence over the testator's purposes by the other. Little v. Sugg, 243 Ala. 196, 8 So.2d 866 (1942); Kilgore v. Atkinson, 227 Ala. 310, 149 So. 808
(1933).
"A `favored beneficiary' has been held to be:
 `[o]ne who, in the circumstances of the particular case, has been favored over others having equal claim to the testator's bounty. An unnatural discrimination, leading to a natural inference that advantage has been taken by one in position so to do; and shown to have been busy in getting such will executed.' [Cook v. Morton, 241 Ala. 188, 1 So.2d 890
(1941).]
 "These elements of the presumption go far, of course, in proving the principal charge of undue influence which has been defined in Locke v. Sparks, 263 Ala. 137, 140, 81 So.2d 670, 673 (1955):
 "`Undue influence, . . . must be such as, in some measure, destroys the free agency of the testator, and prevents the exercise of that discretion which the law requires a party should possess as essential to a valid testamentary disposition of his property . . .'
 And it must be kept in mind that not all influence is undue; any influence resulting from sympathy and affection only is not disfavored. See Abrams v. Abrams, 225 Ala. 622, 144 So. 828 (1932)." (Emphasis in original.)
See also, Brunson v. Brunson, 278 Ala. 131, 176 So.2d 490
(1965).
This case is void of evidence tending to prove any undue activity on the part of Mrs. Smith in procuring the execution of the will even if we assume, for purpose of argument, there was a scintilla of evidence that Mrs. Smith was dominant and controlling in the relationship due to Willie's weakened mental state. Moreover, it is not clear, just as it was not clear inPruitt, that Mrs. Smith was a favored beneficiary under the test laid down in the cases. It was not shown that Harold had a claim to Willie's benevolence or sympathy that was equal to that of Mrs. Smith, Willie's wife. Consequently, this case must be reversed for the trial court's refusal to direct a verdict for Mrs. Smith, the proponent, on the issue of undue influence. See Pruitt, supra.
Because we have concluded the judgment in this case must be reversed for the trial court's refusal to direct a verdict in favor of Mrs. Smith on the issue of undue influence, all other issues raised by the parties are pretermitted from consideration. We hereby reverse and remand for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, ALMON and SHORES, JJ., concur. *Page 1073