322 So.2d 682

Carolyn Frances JONES

v.

Mary Louise MOORE.

SC 1147.

Supreme Court of Alabama.

Nov. 20, 1975.

32

Walter W. Furner, Bessemer, for appellant.

**SHORES, Justice.**

The litigants in this case are mother and daughter. Mrs. Moore was married to Mr. Moore, Mrs. Jones' father, for fifty-two years prior to his death in 1974. During the course of their marriage they acquired a home in Birmingham, for which they paid approximately $8,200. Mrs. Moore testified, and it was not contradicted, that she paid the earnest money on the house and that she and her husband together paid the balance. Title to the property was held in their joint names with right of survivorship.

Thomas L. Foster, Birmingham, for appellee.

Having enjoyed good health all of his life, Mr. Moore was stricken with cancer sometime in 1973, and spent some weeks in the hospital in the fall of 1973. He returned home in October and remained there until he was readmitted to the hospital on January 16, 1974, at which time his condition was diagnosed as terminal. Mr.

Moore never returned home and remained hospitalized until his death on March 6, 1974.

On February 6, 1974, from his hospital bed, Mr. Moore executed a deed conveying his one-half interest in the home to his and Mrs. Moore's daughter. It is this deed which is the subject of the controversy between these parties.

Mrs. Moore filed suit seeking to have title to the subject property quieted in her and asked the court to set aside the deed executed by her husband on the ground that Mr. Moore was, at the time of the execution of the deed, mentally incompetent to execute a valid conveyance of the land.

The trial court correctly held that *Nunn v. Keith*, 289 Ala. 518, 268 So.2d 792 (1972), had settled the question of whether one joint tenant in a survivorship deed is capable of conveying his interest in jointly held property absent the consent of the co-tenant, and observed that the only issue remaining for its determination was the mental competency of Mr. Moore at the time of the execution of the deed.

The trial court found that Mr. Moore was incompetent on February 6, 1974, when he purported to convey his interest in the property to his daughter.

From this judgment, the daughter appeals.

It is her argument that although the evidence was taken ore tenus, that there was no evidence to support the trial court's finding that Mr. Moore was incompetent on that date.

Appellant states in brief:

"A detailed scrutiny of the evidence fails to find *any* supportive of the claim that Robert Earl Moore, on February 6, 1975, was mentally incompetent to execute a deed. . . ." (Emphasis added)

At least five witnesses, other than the medical doctors, whose testimony was received by deposition, testified that following Mr. Moore's illness they had observed him on numerous occasions, and at times found him in a deteriorated state, mentally; that he could not carry on rational conversations; sometimes drifted off of one subject on to another; would forget whether he had had meals; was incapable of managing his affairs; incapable of understanding what was going on, etc. Admittedly, the evidence is conflicting, and we see no purpose to be served in setting all of it out. However, to illustrate that appellant is wrong in her assertion that there was no evidence to support the trial court's finding, we do set out the following, which appears in the record:

Mr. Moore's physicians' notes, made at times they examined him during his stay in the hospital, show the following:

"1–24–74  Disoriented at times  . . .

"1/25/74  . . .  Appears pt's mental and physical status fluctuates  . . .

"  .  .  .

"1/27  Pt appears depressed  . . .

"1–28  Pt's family con't to be in turmoil.  Pt is depressed but his mental+physical  . . .  is satisfactory.

"  .  .  .

"2–1  Disoriented today.  Combative. Will not allow bath.  Trying to climb over side rails.

"2–2  Pt very sedated.  Orientation comes and goes.

"2–3  Pt is oversedated. . . .

"2–4  Less sedated. . . .

"2–5  Very alert. . . .

"2–6  To begin ambulating  . . .

"2–7–74  Continues to improve  . . .

"2–8–74  Alert, oriented better. . . ."

Dr. Bancroft, on deposition, stated that in addition to cancer of the lung, Mr. Moore

had suffered a stroke at the time he was readmitted to the hospital in January, 1974, and in addition:

"A . . . he had an inoperable tumor of the lung and the prognosis was particular decline until death . .

"Q . . . Did that condition affect Mr. Moore's central nervous system?

"A It did.

"Q Did this condition affect his reasoning capabity?

"A It did. It did.

"Q Doctor, in his condition, as far as his condition is concerned, three months prior to the time that he died would you, based on his medical—based on your medical prognosis of his condition, would you have transacted business with this man?

"  . . .

"A I would not have. I would not have transacted business with him.

"  . . .

"Q Okay, sir. Would you tell us why, please, sir?

"A Well, he was impaired. He was mentally impaired from the standpoint of orientation, alertness, ability to recall facts, ability to appreciate time, person, and place."

Also in the record is a letter, which is as follows:

"January 21, 1974

"  . . .

"TO WHOM IT MAY CONCERN:

"This is to certify that I have examined Robert L. Moore, white male of 73 years who resides at 1124 McMillan Avenue, S.W., Birmingham 35211, on 1/20/74

following his admission to the Baptist Medical Center-Montclair and have found him to be suffering from damage of the central nervous system so as to render him incompetent in the management of his own affairs. This condition is expected to be permanent.

"/s/ Joe D. Bancroft, M.D.
Joe D. Bancroft, M.D."

Dr. Bancroft explained that it was his opinion that Mr. Moore was suffering from two disorders of the central nervous system, arteriosclerosis and tumor of the brain, both of which he said were incurable and progressive, and that both conditions affect a person's reasoning ability.

Against this evidence was the testimony of the appellant, who testified that her father was capable of knowing what he was doing on the day he signed the deed. It was her testimony that her father had conveyed his interest in the home of her parents to her so that his wife would have a home.

It is her argument that the testimony taken ore tenus was insufficient to support the trial court's conclusion, and that the central issue of Mr. Moore's competency must be decided on the basis of the medical evidence received by deposition.

We disagree with the appellant.

■ Appellant appears to argue that no lay witnesses testified with absolute certainty that Mr. Moore was incompetent on the exact day that the deed was executed. We have carefully read the entire record. All of the witnesses who testified had known Mr. Moore for a number of years, and had seen him frequently after he was hospitalized with his final illness. We think they were competent to give an opinion, based upon their observation of him, as to Mr. Moore's mental capacity at the time of the execution of the deed in question. In *Blackwell v. Sewall*, 280 Ala. 359, 365, 194 So.2d 519, 525 (1967), we said:

"It appears to be the doctrine of our cases that whether a witness is qualified

to deliver a non-expert opinion, favorable or unfavorable, upon the issue of mental capacity, is a question submitted to the sound discretion of the trial court, a discretion not reversible unless plainly erroneous. *Wear v. Wear,* 200 Ala. 345, 76 So. 111; *Price v. Marshall,* 255 Ala. 447, 52 So.2d 149; *Haghart v. Cooley,* 278 Ala. 354, 178 So.2d 266."

■ The thrust of appellant's argument is that since no witness who testified said with absolute certainty that they saw Mr. Moore on the exact date that the deed was signed, that none of them was in a position to testify with regard to his mental condition on that day. Although many of them testified that they had visited with him periodically during the period in which he was hospitalized, she asserts that only she and a practical nurse, who was in attendance at the time the deed was signed, were in a position to give an opinion as to his condition on that day. Under our cases, we do not think it is necessary to sustain the trial court's finding that such precision is necessary. As indicated, the medical evidence was that Mr. Moore was mentally impaired and had been since he suffered a stroke in early January. It was Dr. Bancroft's opinion that the condition was progressive and permanent.

The rule has been repeatedly stated by this court, and appears as follows in *Hall v. Britton,* 216 Ala. 265, 267, 113 So. 238, 239 (1927):

"In order to render a deed void because of the mental incapacity of the grantor—and the principle is the same for any other signatory—the test is 'not merely that the grantor's mental powers were impaired, but whether he had sufficient capacity to understand in a reasonable manner the nature and effect of the act which he was doing.' 18 Corp.Jur. 218, § 131; *White v. Farley,* 81 Ala. 563, 8 So. 215; *Stanfill v. Johnson,* 159 Ala. 546, 49 So. 223.";

which was quoted with approval in *Casey v. Krump,* 260 Ala. 280, 69 So.2d 864

(1954), which noted that the rule had been followed also in *Spence v. Spence,* 239 Ala. 480, 195 So. 717 (1940).

The next point made by appellant is that the ore tenus rule does not attach since, she contends, the lay witnesses were not qualified to state an opinion, and the only remaining evidence of Mr. Moore's incapacity was by way of depositions of the physicians. Therefore, she says, we should review the medical evidence without any presumption in favor of the conclusion reached by the trial court. Again, we disagree.

■ First, as indicated, we think the trial court correctly considered the testimony offered ore tenus by the lay witnesses. Secondly, the rule has long been established that where the trial court's determination is based on evidence, part of which was offered orally, and part by deposition, its finding has the effect of a jury verdict and will not be disturbed on appeal unless plainly and palpably erroneous and contrary to the great weight of the evidence. In *Blackwell v. Sewall,* supra, which also involved the validity of a deed which was cancelled because of the alleged mental incompetency of the grantor, the rule was stated as follows:

"All of the numerous witnesses, except Drs. Brown, May, and Mudd, testified orally before the court. The three medical witnesses testified by deposition. After reading this record we are clear to the conclusion that there was ample oral and material testimony tending to support the Chancellor's conclusions and decree. He saw and heard all of the witnesses except the three named medical witnesses, and observed their demeanor. Having this advantage, his conclusions will not be disturbed unless plainly and palpably contrary to the weight of the evidence. *McBrayer v. Smith,* 278 Ala. 247, 177 So. 571; *Thompson v. Collier,* 170 Ala. 469, 54 So. 493; *Hackett v. Cash,* 196 Ala. 403, 72 So. 52." (280 Ala. at 367, 194 So.2d at 526)

The foregoing disposes of appellant's assignments of error numbered one through eleven, all of which were argued together.

She next claims error in the trial court's sustaining an objection to a question asked Mrs. Moore, on cross-examination, which was: "Q Have you been convicted of crime involving moral turpitude?"

There is no error to reverse here. Assuming, without agreeing, that the question involved a subject which was proper cross-examination, the latitude to be allowed in cross-examination of witnesses is within the discretion of the trial court, and unless that discretion is grossly abused, it will not be reviewed here, particularly in respect to collateral and irrelevant matter. *Powell v. Powell,* 285 Ala. 230, 231 So.2d 103 (1970). Besides, even if such were proper cross-examination, the question as put is improper for the reason that it was too general and should have been disallowed for that reason alone. *Craven v. State,* 22 Ala.App. 39, 111 So. 767 (1927).

The last argument advanced by the appellant is that the trial court erred in refusing to allow testimony of Mr. William Thomason, attorney for the appellant, who volunteered to testify. As stated by the appellant, the only issue to be determined in this case was the mental capacity of Mr. Moore at the time of the execution of the deed in question.

In his voluntary statement, before asking to be put on the stand, Mr. Thomason said:

"MR. THOMASON: I will show to the Court and be cross-examined if counsel wishes that on some time prior to February the 6th, Mrs. Jones telephone[d] my office, put Mr. Moore on the telephone; I discussed the deed with him and informed him as to what I thought it might do; and he answered my questions and he appeared coherent.

"I have never met Mr. Moore; I have never seen him physically; that one conversation on the telephone is the only direct conversation that I recall having with Mr. Moore; at the same time that he talked with me about the deed he retained me to represent him in a contest of the Inquisition as to his sanity. His voice indicated that he understood what he was doing at both times."

It is obvious, from Mr. Thomason's voluntary statement, that he had no occasion to observe Mr. Moore, nor to form an opinion as to his mental capacity, other than a voice on the telephone, which was identified to him as Mr. Moore's. We note that, while appellant argues that the trial court erred in relying on testimony of other lay witnesses who did observe Mr. Moore over a period of time, she now complains that her attorney was not permitted to express his opinion after his own admission that he had never seen Mr. Moore at all.

There being no further assignments of error, the judgment appealed from is affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL, MADDOX and JONES, JJ., concur.