465 So.2d 359 (1984)
Jeanette T. WALL
v.
Marguerite Sharron HODGES, et al.
83-627.
Supreme Court of Alabama.
December 21, 1984.
Rehearing Denied February 8, 1985.
*360 James L. Clark and Lynn Baxley Ault of Lange, Simpson, Robinson & Somerville, Birmingham, for appellant.
William H. Mills and Gerald L. Miller of Redden, Mills & Clark, Birmingham, for appellees.
PER CURIAM.
Jeanette T. Wall, as proponent and sole beneficiary of the last will and testament of D.J. Sharron, appeals from a judgment against her and in favor of Marguerite Sharron Hodges, and others, in the Circuit Court of Jefferson County, Alabama. The appellant claims, inter alia, that her motion for a directed verdict should have been *361 granted by the trial court. We agree, and we reverse the judgment of the court below.
The facts of this case are as follows.
D.J. Sharron owned and operated a trucking business called Sharron Motor Lines. In 1969, he purchased the company, then having its principal office in Selma, Alabama, and moved it, along with his residence, to Meridian, Mississippi. Jeanette T. Wall was first employed in the company's Birmingham office in 1970. In three years' time she became a vice-president, and, in 1977, was promoted to executive vice-president.
Sometime in late 1974 or early 1975, Sharron moved his residence to Birmingham, along with the main office of Sharron Motor Lines. After this move, Jeanette Wall began handling his personal business affairsincluding writing his checks, paying his bills, doing his personal filing, and handling his mail. She also travelled with him to branch offices of the company, and even helped him buy some of his clothes. There was evidence adduced at trial tending to show that Wall did not like Sharron's children and might have had something to do with two of the children leaving their positions with the company.
Contestants produced evidence that D.J. Sharron was a very sick man, physically as well as mentally. Sharron had suffered two heart attacks and had been diagnosed as having various diseases late in his life. The majority of the testimony concerned Sharron's lack of mental capacity in the late 1970's and early 1980's. A review of the record reveals that Sharron had some problems maintaining control over his mental faculties. There was testimony from several witnesses (other than contestants) who had noticed drastic changes in Sharron's behavioral patterns.
The remainder of the testimony at trial offered by appellees concerned Wall's exercise of control over Sharron's life. On more than one occasion he voiced his apparent powerlessness to help his children when they had run-ins with Wall. By her testimony appellant attempted to show that she was Sharron's only real friend and the only real hope for the business to prosper after his death. Appellant also offered testimony that Sharron's children were interested only in his money, and caused many problems for Sharron, especially late in his life. There was even testimony at trial that Sharron did not believe that all of the children were actually his.
In December 1981, Sharron went to see his personal lawyer, Marvin B. Speed, in Meridian, Mississippi. While there, he executed a will on December 2 which left his entire estate to Jeanette Wall. Later, fearing that this will might not be valid in Alabama, Sharron contacted his corporate attorney, Donald B. Sweeney. After some consultation, Sharron was advised to re-execute the December 2, 1981, will in Alabama. Wanting to ensure that the provisions of this will would be followed, Sharron explored the possibility of having this will video-taped. Upon advice of counsel, he instead underwent a psychiatric examination in order to confirm his mental capacity to execute a will. On February 4, 1982, Sharron re-executed the December 1981 will, without revision. Sharron died approximately one month later.
On March 9, 1982, proponent Jeanette T. Wall filed a petition to probate the will of D.J. Sharron dated February 4, 1982, in the Probate Court of Jefferson County. Subsequently, four of Sharron's children filed four separate will contests and requests for transfer to circuit court, as well as filing three other purported wills of D.J. Sharron, dated December 2, 1981, September 25, 1980, and December 23, 1976. All four will contests were consolidated in the same trial, and the case proceeded to trial with only the two most recent wills being in fact contested. The jury returned a general verdict in favor of the contestants concerning the two issues raised by the contestants, testamentary capacity and undue influence. This appeal followed.
The appellant raises four issues for our review.

*362 1. Whether the trial court erred in granting contestants' motion to consolidate all pending will contests in this action.
2. Whether the trial court erred in admitting opinion testimony as to the soundness of the testator's mind from four members of the testator's family, three of whom were contestants.
3. Whether the contestants failed to meet their burden of proving undue influence exercised by the proponent over D.J. Sharron in procuring the execution of the wills.
4. Whether the trial court erred in denying the proponent's motion for a directed verdict on either the mental capacity issue or the undue influence issue, thus mandating a reversal.

I.
We find no error with the consolidation of the will contests by the court below. Whenever there are two or more wills being contested and one of the parties moves to consolidate the contests, the trial court may order consolidation where the actions involve a common question of law or fact. Hooper v. Huey, 293 Ala. 63, 300 So.2d 100 (1974). In the instant case, the legal issues are identical for all of the contests. Separate trials of the same issues and facts are a waste of time and money, and should be avoided if possible. Hooper v. Huey, supra. Also, we disagree with the appellant's contention that consolidation confused the jury and led to prejudice against her in this case.

II.
Next, the appellant argues that the trial court erred in allowing testimony concerning the mental capacity of the testator from four witnesses because none of them had seen Sharron on either of the days when the wills were executed. In Jones v. Moore, 295 Ala. 31, 322 So.2d 682 (1975), we rejected the contention that the witnesses had to have seen the grantor of a deed on the date he actually signed the document. The appellant has cited no authority why our decision in Jones should not control in this case.
The appellant also argues that the witnesses should not have been allowed to testify, because, she says a proper foundation was not laid. We will not reverse the decision of the trial court concerning the qualifications of a non-expert witness to testify about the testator's mental capacity unless the court's decision is plainly erroneous. Blackwell v. Sewall, 280 Ala. 359, 194 So.2d 519 (1967). We agree with the trial court's determination that the witnesses were qualified to testify in this case.

III.
In Pruitt v. Pruitt, 343 So.2d 495 (Ala. 1977), this Court discussed what must be proven to establish the existence of undue influence:
Our cases have consistently held that when undue influence is asserted in a will contest, the contestant has the burden, in order to raise a presumption of undue influence, to prove a dominant confidential relationship and undue activity in the execution of the will by or for a favored beneficiary. Wilson v. Payton, 251 Ala. 411, 37 So.2d 499 (1948), citing Hyde v. Norris, 250 Ala. 518, 35 So.2d 181 (1948). In other words, evidence must establish: (1) a confidential relationship between a favored beneficiary and testator; (2) that the influence of or for the beneficiary was dominant and controlling in that relationship; and (3) undue activity on the part of the dominant party in procuring the execution of the will. Wilson v. Payton, supra; Alexander v. Alexander, 208 Ala. 291, 94 So. 53 (1922). [Emphasis in original.]
343 So.2d at 499. Although the appellees may have proven the existence of the first two elementsa confidential relationship and a dominance or control over Sharron by Wallthey have failed to offer any proof of the third element. There is no evidence that Wall had any involvement in the procuring of either the December 1981 *363 will or the February 1982 will of D.J. Sharron.
The appellees make much of the fact that Wall was active in Sharron's business as well as his personal affairs. This is not sufficient justification for the rejection of a will. "There must be evidence, in addition to the fact of relationship, of active interference in procuring the execution of the will." Arrington v. Working Womans'Home, 368 So.2d 851 (Ala.1979); citing Burke v. Thomas, 282 Ala. 412, 211 So.2d 903 (1968). The appellees do not even offer a scintilla of evidence that Jeanette Wall had anything to do with either will, or that she knew either will existed until after J.D. Sharron died. To the contrary, Sharron's attorney testified that not only was Jeanette Wall never present when he and Sharron discussed the December 1981 will, but that she was not present on the day it was executed.
In fact, all of the evidence offered by the appellees concerning Wall's involvement in a will of J.D. Sharron was with regard to a will drawn up by a different attorney over five years earlier. We reject the appellees' argument that because Wall might have had some involvement in the 1976 will she must have exerted undue influence over Sharron five years later.
We agree with the appellees' statement that undue influence may be proven using circumstantial evidence. Further, all that is necessary for the issue to be submitted to the jury is a scintilla of evidence of each of the three elements. Reed v. Shipp, 293 Ala. 632, 308 So.2d 705 (1975). However, the evidence needed to take the case to the jury on the question of undue influence is a reasonable inference, rather than mere suspicion. Locke v. Sparks, 263 Ala. 137, 81 So.2d 670 (1955). In this case the appellees have failed to put forth one shread of evidence that Jeanette Wall had anything to do with the procurement of the December 1981 will or the re-execution of it in February 1982. Evidence proving that there was undue activity on the part of Jeanette Wall in procuring the execution of the will is crucial to the determination of the existence of undue influence. Rabon v. Rabon, 360 So.2d 971 (Ala.1978). Since the appellees failed to offer even a scintilla of evidence regarding this issue, the question should not have been submitted to the jury.

IV.
Counsel for the appellant moved for a directed verdict on the undue influence issue as well as on the testamentary capacity issue. The trial court denied each motion. Even if there were sufficient evidence of a lack of testamentary capacity for the court to properly submit this issue to the jury, the court committed reversible error when it allowed the jury to consider the undue influence issue. In this situation we are unable to presume that the general verdict returned by the jury relates to the issue that was properly before the jury and not to the issue that was unsupported by the evidence. John Deere Industrial Equipment Co. v. Keller, 431 So.2d 1155 (Ala.1983); Aspinwall v. Gowens, 405 So.2d 134 (Ala.1981). Therefore, the general jury verdict cannot be allowed to stand.
For the above-stated reasons, the judgment of the trial court is reversed and the cause remanded for a new trial consistent with this opinion.
REVERSED AND REMANDED.
FAULKNER, JONES, EMBRY, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., and MADDOX, ALMON and SHORES, JJ., dissent.
TORBERT, Chief Justice (dissenting).
I respectfully dissent. The majority opinion clearly sets forth the three elements necessary to establish the existence of undue influence. It is without disagreement that the contestants have proven the existence of two of those elements, a confidential relationship between the favored beneficiary and the testator and a dominance or control by the favored beneficiary over the testator. However, I do not agree with the majority that the contestants have *364 failed to offer any evidence of the third element, undue activity.
Evidence of undue activity in procuring the execution of a will is necessary to the determination of the existence of undue influence in that it is essential in order to prove that the testator did not make the will of his own volition. Rabon v. Rabon, 360 So.2d 971 (Ala.1978). The general rule is well established that in a will contest, activity in the procurement of a will may be proved by circumstantial evidence. Reed v. Shipp, 293 Ala. 632, 308 So.2d 705 (1975); Smith v. Moore, 278 Ala. 173, 176 So.2d 868 (1965); Cook v. Morton, 241 Ala. 188, 1 So.2d 890 (1941). Furthermore, "all that is needed to submit the case to a jury is a mere scintilla from which the jury can infer some undue activity in the procurement or execution of the will." Reed, 293 Ala. at 636, 308 So.2d at 708.
In Rabon, supra, this Court stated that a threat to leave a sick testator may suffice to establish undue activity in the procurement of a will in order to establish undue influence. While there is no evidence of a similar threat in this case, the record is replete with evidence, though circumstantial, sufficient to more than satisfy the scintilla standard.
Sharron was in a weakened mental and physical condition. During the period December 1979 until his death in March 1982, he suffered two heart attacks and was hospitalized 17 times. He suffered from diabetes and cirrhosis. Furthermore, witnesses, other than the contestants, testified that during this time they noticed drastic changes in Sharron's behavior.
There was also testimony that significant changes were made in the numerous wills executed by Sharron, specifically as regards the disposition of his assets. The earlier wills made substantial provisions for Sharron's children, whereas the last two wills, those dated December 1981 and February 1982, left the entire estate to Jeanette Wall. This was in spite of the fact that Sharron's youngest child was only thirteen years old.
The testimony was undisputed that Wall handled Sharron's personal business affairs, wrote his checks, paid his bills, handled his mail, and even helped him buy some of his clothes.
Finally, even though the majority opinion states that Sharron's attorney testified that Wall was never present when he and Sharron discussed the December 1981 will and that she was not present on the day the will was executed, the record clearly shows that Sharron's attorney testified, as to the day the December 1981 will was executed, "Whenever Mr. Sharron brought up any matters related to his will, [Wall] always excused herself." (Transcript, p. 155.) Obviously, it can be inferred that Wall accompanied Sharron to his attorney's office and that she was present during some of the discussion between Sharron and his attorney. Whether Wall was present when the will was discussed or present when the will was executed is immaterial. In a will contest, it is not required that the favored beneficiary be shown to have been present at the execution. A testator can be coerced into making his will by one who remains unseen. Rabon, supra.
Admittedly, the testimony referred to, considered separately, might not be sufficient to warrant submission of the issue of undue influence to the jury; however, when that testimony is considered with all the other evidence, it cannot be said that the contestants have failed to offer even a scintilla of evidence to prove undue influence in the procurement of Sharron's December 1981 or February 1982 will. Consequently, the trial court's denial of the proponent's motion for directed verdict was proper.
MADDOX, ALMON and SHORES, JJ., concur.