This appeal is from an injunction which enjoined the owners of a hospital to limit its operation to the care of patients who have an average length of stay of thirty days or more. Springhill Memorial Hospital (Springhill) initially filed the suit; the Alabama State Health Planning and Development Agency (SHPDA) and the Mobile Infirmary Association intervened as plaintiffs. The principal defendant is the Hospital Corporation of America (HCA), a large corporation which owns hospitals throughout the country, including one hundred percent of the stock of defendant Doctors Hospital of Mobile, Inc. (Doctors). Defendant Knollwood Park Hospital (Knollwood) is an operating division of Doctors. Knollwood's two hundred and fifteen bed heart and cancer hospital, known as the West Tower, is the branch of HCA at issue.
Plaintiffs aver that the West Tower is certified to care only for patients with an average length of stay (ALOS) in the hospital of at least thirty days. HCA says that the thirty-day ALOS does not apply to the West Tower since its plan was approved prior to the creation of SHPDA and has met all of the requirements of SHPDA's predecessor agency.
Before reviewing the merits of this controversy, we must decide whether the ore tenus rule will be observed during our review of the trial court's judgment.
After hearing part of the testimony of the plaintiffs' first witness, the court, as a time-saving measure, asked all parties to glean the voluminous exhibits already in evidence and submit the case on briefs and depositions. The testimony of the sole live witness was contained in fourteen pages of the reporter's transcript. The plaintiffs did not finish their examination and there was no opportunity for cross examination of the witness before the trial court. His lengthy deposition was admitted into evidence.
The case was tried then exclusively on exhibits. Springhill introduced sixty-two exhibits and HCA introduced two hundred and eighty-six exhibits. No witness was fully examined in the presence of the trial court.
We are aware of the cases holding that when the evidence is taken ore tenus before the trial court, or partly so, on review we grant the trial court a presumption of correctness. See, e.g.,Jones v. Moore, 322 So.2d 682 (Ala. 1975); Air Movers of America,Inc. v. State National Bank, 293 Ala. 312, 302 So.2d 517 (1974);State v. Frazier, 222 Ala. 180, 131 So. 442 (1930); Penn v. Penn,437 So.2d 1053 (Ala.Civ.App. 1983); Nero v. Moore-Handley, Inc.,370 So.2d 1043 (Ala.Civ.App. 1979). However, in each of these cases at least one witness was examined and cross examined orally before the trial court.
The rationale behind the ore tenus rule has historically been that the trial court deserves a presumption of correctness when it is in a position to actually see and hear the testimony, observing firsthand the demeanor of the witnesses. Christian v.Reed, 265 Ala. 533, *Page 1061 92 So.2d 881 (1957); Steed v. Bailey, 247 Ala. 407, 24 So.2d 765 (1946);Barran v. Barran, 431 So.2d 1278 (Ala.Civ.App. 1983). Considering that the trial court heard only part of the testimony of one witness, including only a partial direct examination and no cross examination, and that the case was otherwise tried exclusively on the basis of numerous depositions and exhibits, we hold that the ore tenus rule does not apply. Consequently, no presumption of correctness will be accorded the trial court's findings on the evidence, and this court will sit in judgment on the evidence as if it had been presented de novo. Smith v. Dalrymple, 275 Ala. 529, 156 So.2d 622 (1963); Lepeska Leasing Corp. v. StateDepartment of Revenue, 395 So.2d 82 (Ala.Civ.App., writ denied,395 So.2d 85 (Ala. 1981).
Now we come to the question of whether the injunction was properly granted. The Circuit Court of Montgomery County is empowered to enjoin "violations of this article or any reasonable rules and regulations of the SHPDA." § 22-21-276 (a), Code 1975. Viewing the evidence de novo, we find the pertinent facts to be as follows:
On January 17, 1978 Southwest Heart and Cancer Center, Inc. (Southwest) applied for an assurance of need (AON) to construct a two hundred and fifteen bed long-term-care hospital, the West Tower now at issue. The application was in response to an identified need. The 1977 State Medical Facilities Plan, instituted as a part of federal regulation of health services under the Social Security Act to allow the federal government to reimburse health care facilities if their facilities were actually needed in the area, had identified a need for two hundred and fifteen long-term-care beds in the Mobile area. There was no need identified for new short-term-care beds in Mobile, and none were made available. The approval to operate the two hundred and fifteen beds was governed by the state designated planning agency (DPA), which was empowered to issue the required AON. The AON was not required under state law. Southwest's application for this AON was originally denied but was subsequently granted on appeal to a fair hearing officer (FHO). No further appeal was taken.
The AON application filed by Southwest stated, in pertinent part, that:
 "[T]he proposed facility is to be a 215 bed long term care hospital to meet the expanding needs of the residents of Mobile County, and surrounding area; and to relieve the General Hospitals in the area of needed hospital beds for short term medical, and surgical patients.
 It will offer medical, surgical, intensive-care, cardiac, ambulatory, and emergency services for heart, cancer, recuperation, and similar long-term patients."
(emphasis added)
Under new state law, after July 30, 1979 no one was allowed to "acquire, construct or operate a new institutional health service" in Alabama without a certificate of need (CON) from SHPDA. Section 22-21-265 (a), Code 1975. The CON replaced the AON. Any entity, such as Southwest, that held a valid AON prior to July 30, 1979 was entitled to a CON "for the facility or service described on the application" for the AON. § 22-21-265
(b), Code 1975. Southwest applied for and received the required CON in mid-1980 to construct a long-term-care hospital.
HCA became interested in Southwest's proposed project when Southwest applied initially for an AON. HCA eventually became manager of Southwest with an option to purchase all of its stock. In mid-1981 HCA exercised its option. HCA completed construction of the West Tower in late 1982. On January 12, 1984 the West Tower was licensed by the Alabama Department of Public Health as a "Two Hundred Fifteen Bed Specialized Heart and Cancer (LongTerm Care) Hospital." (emphasis added).
HCA contends that when the FHO approved the application for an AON in 1979, and no appeal from that decision was taken, the approval was final and estops any subsequent litigation on the application. We agree that the FHO's decision is *Page 1062 
final and not subject to collateral attack. But what did that officer decide in 1979?
The FHO determined that the original denial of the AON was procedurally defective. The FHO found that the Health Systems Agency had used the wrong medical facilities plan, i.e. it had used the 1978 plan rather than the 1977 plan; that the Project Review Committee, which disapproved the application, was illegally constituted; that the State Committee of Public Health, which also disapproved the application, denied the applicant due process; and that applicant was not notified of the decision of the State Committee within the time allowed by applicable rule or law. The FHO further found that the proposed facility, as described in the application, conformed to the 1977 Medical Facilities Plan.
The application approved by the FHO contained a proposal to construct and operate a two hundred and fifteen bed long-term-care facility. Nowhere in the application was long-term care defined, nor did the FHO make any finding as to the meaning of long-term care. In essence, the FHO found that one long-term-care facility was authorized for Mobile County; that the applicant sought permission to build such a facility; and that the application met the requirements of the 1977 Medical Facilities Plan. Therefore, we do not find that the FHO's decision bars further litigation on the meaning of long-term care as it is used in the CON.
In our search for the meaning of long-term care as used in the application for a CON, we find the term defined in the Alabama State Board of Health Rules, Regulations and Standards, § 102.17 (the Rules), effective on January 20, 1967: "Long term care" is defined as "prolonged care of patients in licensed institutions . . . where the average length of patient stay is thirty days or longer." "Short term care" is defined in section 102.32 as "a limited period of care of patients in licensed institutions where the average length of patient stay is less than thirty days." These rules are, in effect, incorporated into each CON application by section 203.2 (c) of the Procedures Manual of the DPA (now SHPDA). Section 203.2 (c) requires, as a part of the review criteria of such applications, that each applicant be in compliance with "state health facility rules, regulations and standards." And, as we said above, an injunction can issue for violation of any reasonable rules and regulations of SHPDA. §22-21-276 (a), Code 1975.
Robert Powell, an employee of the Bureau of Health Development, the agency that initially recommended the approval of Southwest's application, testified before the FHO that when his agency reviewed Southwest's application they reviewed it under the state rules, regulations, and standards, which defined long-term care as a patient stay of longer than thirty days.
Clay Dean, the director of DPA, the predecessor agency to SHPDA when Southwest initially sought its AON, stated that applicants were expected to be aware of the rules under which they were operating and to follow them. He said that the application provides that "There are in force in the State of Alabama reasonable minimum standards of licensure and methods of operation for hospitals and health facilities," and that this places the applicant on notice of the rules and regulations followed by SHPDA.
Harvey Fishero, the administrator of HCA's Knollwood facility, admitted that he drafted the 1981 proposed service plan for Knollwood Park Hospital and Southwest Alabama Heart and Cancer Center. The proposed plan calls the type of facility involved a "long term care" hospital, and states in the plan itself that "For the purpose of this proposal an average length of stay of thirty days or more is accepted as a definition of long-term care."
Alan Koch, a former director of SHPDA, stated that the thirty-day ALOS has been in effect since the adoption of the Rules in 1967. He said that the reason for the thirty-day rule is that patients who are hospitalized for longer than thirty days *Page 1063 
generally require a different kind of hospital care than acute care patients, who are hospitalized for less than thirty days, so it is a cost efficiency measure in the interests of the patients to keep them in separate places.
We conclude that the evidence in the record amply supports the findings of the trial court that HCA and its predecessor corporation applied for and were granted a CON and license to construct and operate a long-term-care facility in the city of Mobile, Alabama. Further, the rules and regulations of the particular state regulatory agencies since 1967 had defined a long-term-care facility as one where the average patient stay was thirty days or more and all the interested parties were fully aware of this definition at all stages.
The next issue for our examination is whether the West Tower was used in violation of the required thirty-day ALOS. Calculations made on the first three months of West Tower's operation show a 6.6-day ALOS. Norman Love, Department Manager of Utilization Review and Cost Containment for Blue Cross, Blue Shield of Alabama, testified that three months was enough time to accurately calculate the ALOS. Thus, the evidence shows that the facility in question was not being operated as a long-term-care facility.
We hold that HCA and its predecessor, Southwest, sought and received permission to construct a long-term-care facility; that "long-term care," under the applicable guidelines, means a thirty-day ALOS and that all interested parties had actual knowledge of this; that HCA was operating the West Tower in violation of the thirty-day ALOS requirement; and that, therefore, the trial court properly enjoined the use of the West Tower in violation of its CON and license.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.