BOLIN, Justice.
On August 16, 2005, Rhonda Lowery sued Marc Lim Cu alleging that she had sustained serious bodily injuries as the result of an automobile accident that occurred on March 8, 2004. Lowery also named Progressive Specialty Insurance Company (“Progressive”) and Economy Premier Assurance Company (“EPAC”) as defendants, seeking from them underin-sured-motorist (“UIM”) benefits. Progressive insured Lim Cu with a policy of insurance in an amount of $100,000 that specifically excluded coverage for punitive damages. Lowery was also insured by Progressive. Progressive had in place three policies of insurance that provided UIM coverage in the amount of $20,000 each to Lowery. Additionally, EPAC had in place two policies of insurance each in the amount of $100,000 that provided UIM coverage to Lowery. EPAC was deemed the primary UIM carrier while Progressive was deemed the secondary UIM carrier.
On September 9, 2005, Progressive moved the trial court, pursuant to Lowe v. Nationwide Insurance Co., 521 So.2d 1309 (Ala.1988), to withdraw from active participation in the case, stating:
*898 “Progressive provided underinsured motorist coverage for [Lowery]; however, that coverage is excess to the liability limits for the defendant Cu and the primary UIM limits of Economy Premier Assurance Company.
“Progressive elects not to participate in further proceedings in this case, including the trial. It is willing to be bound by the outcome of this case. It does not agree to be bound by any consent judgment and reserves the right to opt back into the case if it fronts any settlement offers by the defendant.”
The motion was not opposed. On September 23, 2005, the trial court granted Progressive’s motion and Progressive opted out of the case.
The case proceeded through the discovery process and was set for trial on three different occasions. A mediation of the case was conducted before the date of the last trial setting. Progressive, as Lim Cu’s primary insurer, agreed to settle Lowery’s claims against Lim Cu for the policy limits of $100,000. Progressive, in its capacity as Lowery’s UIM-coverage provider, agreed to the settlement and waived its subrogation rights. Thereafter, EPAC agreed to settle Lowery’s UIM claim against it for $100,000 of the $200,000 in total available coverage. Subsequently, Lowery indicated that she intended to pursue her UIM claim against Progressive.
On September 28, 2006, Progressive moved the trial court to return to active participation in the case, stating that Lowery had accepted less than the policy limits in settling her UIM case against EPAC, the primary UIM provider. The trial court, on December 13, 2006, entered an order denying Progressive’s motion to return to active participation in the case. Progressive petitions this Court for a writ of mandamus directing the trial court to reverse its order denying its motion and to allow it to return to active participation in Lowery’s UIM case against it. This Court has consistently held:
“ ‘ “The writ of mandamus is a drastic and extraordinary writ, to be ‘issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.’ Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993); see also Ex parte Ziglar, 669 So.2d 133, 134 (Ala.1995).” Ex parte Carter, [807 So.2d 534,] 536 [(Ala.2001) ].’ ”
Ex parte Queen, 959 So.2d 620, 621 (Ala.2006) (quoting Ex parte McWilliams, 812 So.2d 318, 321 (Ala.2001)).
In Lowe v. Nationwide Insurance Co., 521 So.2d 1309, 1309 (Ala.1988), this Court was presented with the following question:
“ ‘Whether an insured may file a claim for underinsured motorist coverage against his or her own insurer in the same lawsuit with the insured’s claim against the alleged underinsured motorist and litigate all the issues in one proceeding. Put another way, must a motorist covered by a valid automobile liability policy of insurance, including uninsured motorist coverage, first sue the alleged negligent motorist and obtain a judgment prior to asserting a claim for underinsured motorist coverage?”
(Footnote omitted.)
This Court set forth the following procedure to be followed in the UIM scenario:
“A plaintiff is allowed either to join as a party defendant his own liability insurer in a suit against the underinsured motorist or merely to give it notice of the *899 filing of the action against the motorist and of the possibility of a claim under the underinsured motorist coverage at the conclusion of the trial. If the insurer is named as a party, it would have the right, within a reasonable time after service of process, to elect either to participate in the trial (in which case its identity and the reason for its being involved are proper information for the jury), or not to participate in the trial (in which case no mention of it or its potential involvement is permitted by the trial court). Under either election, the insurer would be bound by the factfinder’s decisions on the issues of liability and damages. If the insurer is not joined but merely is given notice of the filing of the action, it can decide either to intervene or to stay out of the case.”
521 So.2d at 1310. This Court’s establishment of the above procedure was based primarily on three underlying considerations:
“1) that of protecting the right of the insurer to know of, and participate in, the suit; 2) that of protecting the right of the insured to litigate all aspects of his claim in a single suit (‘Separate trials of the same issues and facts are a waste of time and money, and should be avoided if possible,’ Wall v. Hodges, 465 So.2d 359 (Ala.1984)); and 3) that of protecting the liability phase of the trial from the introduction of extraneous and corrupting influences, namely, evidence of insurance. Robins Engineering, Inc. v. Cockrell, 354 So.2d 1 (Ala.1977).”
521 So.2d at 1309.
Progressive argues that based on Lowe it should be allowed to return to active participation in this case in order to protect its interests that, it says, would not otherwise be protected. Specifically, Progressive contends that at the time it chose to opt out of the case it did so knowing that its interests as the secondary UIM carrier would be protected by the presence of EPAC, the primary UIM carrier, and the $300,000 in total available coverage from EPAC and Progressive, as Lim Cu’s insurer. Progressive states that it made a good-faith investigation of Lowery’s claim and determined that her damages would not exceed the $300,000 in available coverage. Progressive contends that it would not have opted out of the case had it known that Lowery and EPAC would settle Lowery’s UIM claim against EPAC for less than the policy limits and that Lowery would then be permitted to proceed against it.
This Court’s holding in Lowe, establishing an “opt-out” procedure for insurers, expressly contemplated that the insurer, upon opting out of the litigation, would thereafter be bound “by the factfinder’s decisions on the issues of liability and damages.” Lowe, 521 So.2d at 1310. Here, there has been a settlement between the plaintiff, Lowery, and the defendant’s primary UIM carrier; therefore, there has been no factfinding on the issues of liability and damages as underscored in Lowe. Under such circumstances, the premise of the choice recognized in Lowe does not exist, and Progressive should not be deprived of the right to reenter the case. This same result was reached by the Court of Civil Appeals in Robinson v. State Farm Mutual Automobile Insurance Co., 813 So.2d 924 (Ala.Civ.App.2001). In Robinson, the uninsured/underinsured carrier, after having opted out of the action, moved the trial court for a summary judgment, contending that it had no liability because the plaintiff had settled for an amount that did not exceed the amount available under the defendant’s liability insurance and because the plaintiff had failed to notify it before settling his claim against the defendant. The trial court granted the sum *900 mary-judgment motion. The plaintiff challenged the right of the insurer to file a summary-judgment motion after having opted out of the action. The Court of Civil Appeals rejected the plaintiffs argument, stating:
“Also, the case on which [the plaintiff] relies, Lowe v. Nationwide Insurance Co., 521 So.2d 1309 (Ala.1988), stands for the proposition that an uninsured/under-insured-motorist-insurance provider may opt out of litigation but is bound by the fact-finder’s decision. In this case, [the plaintiff] settled his claims against [the defendant].”
813 So.2d at 927. Thus, the decision by the Court of Civil Appeals allowing the insurer to file its summary-judgment motion after having opted out of the case pursuant to Lowe was based on the absence of a finding by the fact-finder on the issues of liability and damages. Likewise, because the claim against Lim Cu was settled for less than EPAC’s policy limits, Progressive’s previous election to opt out of the action, made in contemplation that any subsequent judgment would be based on a decision of a fact-finder, does not prevent it from reentering the action.
Accordingly, we conclude that Progressive has demonstrated a clear legal right to the relief sought, and we grant the petition for a writ of mandamus directing the trial court to reverse its order denying Progressive’s motion to return to active participation in the case.
PETITION GRANTED; WRIT ISSUED.
COBB, C.J., and SEE, LYONS, WOODALL, STUART, SMITH, PARKER, and MURDOCK, JJ., concur.