MOORE, Judge,
concurring in the rationale in part and concurring in the result.
The Alabama Workers’ Compensation Act (“the Act”), Ala.Code 1975, § 25-5-1 et seq., provides the standard by which this court is to review judgments entered by circuit courts in workers’ compensation actions. Section 25-5-81(e), Ala.Code 1975, provides:
“(1) In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.
“(2) In reviewing pure findings of fact, the finding of the circuit court shall *810 not be reversed if that finding is supported by substantial evidence.”
In U.S. Steel Mining Co. v. Riddle, 627 So.2d 455 (Ala.Civ.App.1993), this court held that
“ § 25-5-81(e), [Ala.Code 1975,] relating to the standard of review, presumption, or correctness and evidentiary standard, is so inextricably a part of the totality of the Workers’ [Compensation] Act as to be an integral part of the substantive right created by the ... Act. Mindful that in some situations the requirement of substantial evidence and the lack of any presumption of correctness may be looked upon as relating solely to remedy, we think that in the instant case, it is a part of a substantive right.”
627 So.2d at 458. According to Riddle, § 25-5-81 (e) confers upon the parties to a dispute as to the benefits available under the Act a substantive right to appellate review in accordance with the standards set out therein. The use of any other standard of review would deny the parties their substantive rights as established in § 25-5-81(e).
As a substantive law, the standard of review cannot be altered by court rule or decision. See Ala. Const. 1901 (Off. Re-comp.), Art. VI, § 150 (formerly Amend. No. 328, § 6.11) (“The supreme court shall make and promulgate rules governing the administration of all courts and rules governing practice and procedure in all courts; provided, however, that such rules shall not abridge, enlarge or modify the substantive right of any party_”). Nevertheless, in Ex parte Mitchell, 989 So.2d 1083, 1090 (Ala.2008), a workers’ compensation case, our supreme court held that, when a circuit court does not receive oral testimony but bases its decision purely on exhibits and transcribed testimony, “no presumption of correctness attaches to the trial court’s judgment, and appellate review is de novo.” De novo review allows an appellate court to “ ‘sit in judgment on the evidence as if it had been presented’ ” to this court for the first time. Eubanks v. Hale, 752 So.2d 1113, 1122 (Ala.1999) (quoting Hospital Corp. of America v. Springhill Hosps., Inc., 472 So.2d 1059, 1061 (Ala.Civ.App.1985)). Using a de novo standard of review, an appellate court assumes the role of the fact-finder, giving no deference to the findings of the circuit court. If convinced that the weight of the evidence warrants findings of fact contrary to those rendered by the circuit court, an appellate court can, based on its own findings of fact, reverse the judgment of the circuit court, even if the findings of the circuit court are supported by substantial evidence. By removing any deference to the findings made by the circuit court, and allowing for an independent weighing of the evidence, de novo review does not limit an appellate court’s review of findings of fact as the legislature set out in § 25-5-81(e)(2).
In Ex parte Mitchell, the supreme court cited only Hacker v. Carlisle, 388 So.2d 947 (Ala.1980), to support its decision to apply a de novo standard of review. Hacker is not a workers’ compensation appeal; rather, it involved an appeal from a declaratory-judgment action involving the meaning of a deed, which was coupled with an action to quiet title to mineral interests. In appeals from ordinary civil judgments like the one in Hacker, de novo review of the evidence has long been the law when the lower court receives exclusively written evidence, briefs, and stipulations. That standard of review does not readily transfer to workers’ compensation appeals, however, as explained at length in Riddle. In cursorily applying the de novo standard of review applicable to ordinary civil appeals, it appears that; in Ex parte Mitchell, the supreme court did not consid *811 er the unique nature of workers’ compensation appeals or signal any understanding that it was overriding the standard of review established by the legislature as “an integral part of the substantive right created by the ... Act.” Riddle, 627 So.2d at 458.
Although it appears that our supreme court has not really scrutinized whether the Act allows for de novo review in workers’ compensation appeals in which a circuit court received exclusively non-oral evidence, this court must follow the supreme court’s pronouncement in Ex parte Mitchell as a binding decision on the matter. See Ala.Code 1975, § 12-3-16. Hence, I concur with that part of the opinion setting out the standard of review as established in Ex paite Mitchell, and I review the evidence de novo to determine the facts of this case.
The evidence in the record shows that Joe Tennison (“the employee”) ruptured the L4-5 disk in his lower back in an accident arising out of and in the course of his employment on July 3, 2009. The employee underwent a partial diskectomy at the L5-S1 level of his lumbar spine on August 14, 2009. In January 2010, the employee also submitted to a fusion surgery at the L4-5 level of his lumbar spine. At some point thereafter, the employee reached maximum medical improvement and was referred to Dr. John Roberts, an anesthesiologist specializing in pain management, who has since been the employee’s primary authorized treating physician.
Since 2010, Dr. Roberts has been treating the employee for significant pain extending from his lower back down his left leg, along with numbness in that lower extremity. Dr. Roberts attributes those symptoms to scar tissue and associated nerve damage resulting from the work-related injury and the two lower back surgeries. In June 2011, Dr. Roberts implanted a spinal-cord stimulator to address the employee’s pain; although the employee indicates that the stimulator works, he still experiences pain at a level of 5 to 7 on a scale of 1 to 10, according to the medical records. In addition to the stimulator, Dr. Roberts prescribes the employee strong narcotic medication for pain, which he takes orally three times per day, as well as daily medication for neuropathic symptoms and for sleep. According to Dr. Roberts, the pain and numbness causes the employee instability and significantly disables him from performing routine physical functions. Dr. Roberts indicates that the employee has become generally deconditioned since his injury. Records from a physical-therapy provider show that the employee does not have a normal range of motion or normal strength throughout his body.
At some point before 2010, the employee’s surgeon recommended pool therapy, which the employee attended. Pool therapy consists of strengthening exercises performed in water. The employee testified that the therapy did not benefit him but, rather, actually made his back feel worse, so he discontinued it. On July 31, 2012, the employee visited Dr. Roberts. At that point, he was ambulating with a walker. Dr. Roberts examined the employee and diagnosed him with postlaminectomy syndrome, lumbar radiculopathy, musculoskel-etal pain, and muscular-disuse atrophy. The medical records from that visit indicate that the employee visited Dr. Roberts specifically to discuss his need for a walk-in bathtub. The employee informed Dr. Roberts that he had not had a bath in three years because he was unable to get in and out of a regular bathtub. In his deposition, the employee testified that he ordinarily had showered before his injury, sometimes bathing, but that he had not been able to bathe since his injury. The employee told Dr. Roberts that he be *812 lieved it would benefit him to get into bathwater in order to do gentle strengthening exercises rather than attend pool therapy. Before that visit, Dr. Roberts had not prescribed pool therapy or recommended installation of a walk-in bathtub for the employee. Dr. Roberts informed the employee that he would request the walk-in bathtub, which he did in two separate letters dated July 24, 2012, and August 7, 2012.
In his deposition, the employee testified that he had requested the walk-in bathtub solely to provide him a means of performing his strengthening exercises at home rather than in pool therapy. However, Dr. Roberts testified that the walk-in bathtub would not be large enough for that purpose. The employee also testified that he thought that the bathtub he wanted would have jets that would massage his legs, which he believed would benefit him. Dr. Roberts did not express any opinion on that point. In November 2012, Dr. Roberts prescribed pool therapy along with daily stretching and exercise. The employee testified that he had attended pool therapy on four occasions but that he also had missed his pool-therapy sessions several times. The rehabilitation provider discharged the employee from pool therapy with a poor prognosis on January 7, 2013, due to nonattendance. The employee testified that the pool therapy did not benefit him, but only worsened his problems. The records from the rehabilitation provider show that the employee did not meet any of his therapy goals to improve his strength or mobility and that the provider believed the employee had a poor understanding of the benefits of therapy. At the time of his deposition, Dr. Roberts was unaware that the employee had been discharged from pool therapy.
Dr. Roberts testified that a walk-in bathtub would not improve the employee’s underlying condition, his neuropathic pain, or his deconditioning, but that sitting in hot water could provide the employee temporary pain relief. The doctor stated that he had not prescribed the walk-in bathtub, but had merely requested that it be considered after the employee requested it. Dr. Roberts believed it would be helpful to the employee to have the walk-in bathtub installed because it would allow him to enter and exit the bathtub without risk of falling, would allow him to maintain his hygiene and his overall quality of life, and would provide temporary pain relief that could encourage the employee to stretch and perform his at-home exercises. The doctor conceded that the condition of the employee probably would not deteriorate if he did not have the walk-in bathtub and that installation of the walk-in bathtub would not restore the employee to a basic level of functioning.
In his letters, Dr. Roberts indicated that he considered the walk-in bathtub to be “medically necessary”; however, in his deposition Dr. Roberts clarified that he had used that phrase as a means to assist the employee in obtaining the walk-in bathtub. Dr. Roberts admitted that the walk-in bathtub was not strictly necessary, but would be only potentially helpful to the employee, noting a distinction between the two. The doctor candidly testified that he advocates for his patients and that, in requesting the walk-in bathtub, he was “trying to do the best I can for [the employee].” The doctor admitted that he had not considered the cost associated with the installation of a walk-in bathtub or other cheaper alternatives that could adequately, prevent the risk of falling. The employer introduced an exhibit at trial describing a transfer chair that would serve that same purpose at a fraction of the cost.
Based on my independent review of the evidence, I find that the walk-in bathtub *813 will not improve the underlying physical condition of the employee. At best, it could provide some temporary pain relief, which could potentially facilitate the employee in stretching and performing home exercises to prevent further physical deterioration; however, whether it would provide any more relief than his current medications and his spinal-cord stimulator and whether the employee would be motivated to stretch and perform his home exercises as a consequence appears speculative at best, especially considering that the employee twice discontinued pool therapy because it worsened his problems and that the rehabilitation provider expressed that the employee had exhibited a poor understanding of the value of therapy. The walk-in bathtub further will not directly relieve the employee from the disabling effects of his injury, because he will remain unstable and weak regardless of any temporary pain relief he may experience from bathing in hot water.
The walk-in bathtub will reduce the risk of the employee falling. However, the employee testified that he has never fallen while showering. It seems a handrail or other assistive device, like the one offered into evidence by the employer, would adequately address that risk, assuming that is even necessary, without the installation of a walk-in bathtub. The walk-in bathtub also would allow the employee to bathe as he occasionally did before his injury, but nothing in the record suggests that the employee has poor hygiene because he exclusively showers or that occasional bathing would improve his quality of life. I find that Dr. Roberts did not prescribe the walk-in bathtub as a medically necessary apparatus, but only requested that it be considered for other practical reasons to satisfy the employee.
Section 25-5-77(a), Ala.Code 1975, a part of the Act, provides that an employer must pay for
“reasonably necessary medical and surgical treatment and attention, physical rehabilitation, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus as the result of an accident arising out of and in the course of the employment.”
In Ex parte Mitchell, the supreme court stated:
“[I]n order to constitute ‘other apparatus’ and be compensable as a medical benefit under § 25-5-77(a), the item must be: (a) reasonably necessary and (b) intended to improve the injured employee’s condition, to prevent the further deterioration of the employee’s condition, or to relieve the employee from the effect of his condition by restoring the employee to a basic level of appearance or functioning. The determination of what constitutes a reasonably necessary ‘other apparatus’ should be made on a case-by-case basis.”
989 So.2d at 1092.
Our supreme court has not expressly considered the exact question whether a walk-in bathtub or similar device constitutes an “other apparatus.” However, in Continental Casualty Insurance Co. v. McDonald, 567 So.2d 1208, 1221 (Ala.1990), the court affirmed a judgment against a workers’ compensation insurance carrier for, among other things, resisting payment for a whirlpool tub, or Jacuzzi, prescribed to an injured worker by his authorized physicians in order to alleviate his lower back pain and' to reduce his reliance on narcotic medication. 567 So.2d at 1214. At trial, the judge had instructed the jury that the workers’ compensation insurance carrier bore the responsibility of paying for “ ‘reasonably necessary medical and surgical treatment, physical rehabilitation, medicine, medical and surgical supplies, crutches, artificial member and other *814 apparatus.’ ” 567 So.2d at 1217. The supreme court held that the judge had properly instructed the jury, implying that the jury could find that the whirlpool tub constituted an “other apparatus” based on the evidence. That evidence included a letter from a physician indicating that a walk-in Jacuzzi was necessary to assure that the injured worker would become immersed to chest level in the water in order to take weight off his back and because the worker lived in a rural area without access to a nearby spa or physical-therapy provider with a similar Jacuzzi. 567 So.2d at 1214-15.
Likewise, in Travelers Indemnity Company of Illinois v. Griner, 809 So.2d 808 (Ala.2001), a worker who had injured his lower back so as to require fusion surgery sued his employer’s workers’ compensation' insurance carrier after it, among other things, failed to authorize payment for a whirlpool tub. The evidence showed that an authorized treating physician had prescribed the whirlpool tub to allow for water therapy to address significant pain and swelling in the legs and feet of the injured worker. 809 So.2d at 811. A doctor wrote a letter indicating that the whirlpool tub would allow the injured worker to reduce his medication load and significantly improve his overall health as well as relieve his lower back pain. Id. The supreme court held that the workers’ compensation insurance carrier had breached a settlement agreement requiring it to pay the injured workers’ reasonably necessary future medical expenses. 809 So.2d at 812. That holding implies that the whirlpool tub at issue in Griner qualified as an “other apparatus” within the meaning of § 25-5-77.
In this case, as he testified, Dr. Roberts never actually prescribed the walk-in bathtub. He also did not request consideration of the walk-in bathtub as an alternative, or even as an additional, pain-relieving device to reduce the employee’s dependence on narcotic pain medication. Dr. Roberts did not testify that the installation of the walk-in bathtub would change the employee’s treatment protocol in any mariner. He also specifically rejected the notion that the walk-in bathtub could be used for water-therapy purposes. Moreover, the evidence shows that the employee has not benefited from pool therapy in the past when it was provided, presumably at the cost of the employer, so it is questionable that the walk-in bathtub will relieve the pain of the employee even temporarily as Dr. Roberts theorized. The facts of this case differ so significantly from those in McDonald and Griner that the result should also differ.
At best, from the perspective of the employee, the walk-in bathtub would allow easier access to a bathtub with a reduced risk of falling. However, Alabama Admin. Code (Dep’t of Labor), Rule 480-5-5-.02(46), defines “medical necessity” to exclude supplies provided to an injured worker “solely for the convenience of the patient.” Moreover, the legislature intended that all medical devices supplied to injured workers would be “at a reasonable and fair cost to employers,” Ala. Acts 1992, Act No. 92-537, § 1, a factor that militates against installation of the walk-in bathtub solely as a fall-prevention measure.
Under the particular facts of this case, I conclude that the walk-in bathtub does not qualify as an “other apparatus” within the meaning of Ex parte Mitchell, McDonald, or Griner for the reasons set out above. However, I conclude that the record does contain' substantial evidence from which the trial court could have reasonably reached a different conclusion and that, if I applied the standard of review from § 25-5-81(e)(2), I would have voted to affirm the judgment. See Ex parte Caldwell, 104 *815 So.3d 901 (Ala.2012), and SouthernCare, Inc. v. Cowart, 146 So.3d 1051, 1067 (Ala.Civ.App.2012) (Moore, J., concurring in part and concurring in the result in part) (discussing substantial-evidence standard of review). I therefore concur that the judgment should be reversed, although I do not agree with all the statements made in the main opinion to reach that same conclusion.
THOMAS, J., concurs.